## OLIVE WHEATON v. THE NORTH BEACH AND MISSION RAILROAD COMPANY.

MEASURE OF DAMAGES IN PERSONAL TORTS.—In actions for personal torts, the law does not fix any precise rule of damages, but leaves their assessment to the unbiased judgment of the jury.

IDEM—NEW TRIAL.—In such case the verdict will not be disturbed on motion for new trial unless the amount is so large as to induce a reasonable person, upon hearing the circumstances, to declare it outrageously excessive, or as to suggest, at the first blush, passion, or prejudice, or corruption on the part of the jury.

IDEM—DUTY OF PASSENGER CARRIERS.—Passenger carriers, by their contracts, bind themselves to carry safely those whom they take into their coaches or cars as far as human foresight will go; that is, for the utmost care and diligence of very cautious persons.

IDEM—INSTRUCTION.—In an action for a breach of such contract, the Court refused an instruction asked by the defendant, which was as follows: "The rule that passenger carriers are to be held to the exercise of the strictest diligence, is not to be understood by the jury as requiring of such carriers those particular precautions as it is apparent *after* the accident might have prevented the injury;" *Held*, that the instruction was properly refused.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

This was an action by the plaintiff, a passenger on the car of the defendant, to recover damages for personal injuries sustained by reason of the alleged negligence of the defendant's servants in starting the car in motion while the plaintiff was alighting, and before she was free therefrom, whereby she was thrown down and her left arm broken. The case was tried by the Court with a jury, and plaintiff had verdict and judgment for two thousand dollars. The defendant moved for a new trial, which was denied, and appealed from the judgment and the order denying a new trial.

The other facts are stated in the opinion of the Court.

*J. G. McCullough*, and *W. W. Crane*, for Appellant.

The Court erred in refusing to give appellant's instruction, as requested. (*Boyce* v. *Cal. Stage Co.*, 25 Cal. 470; *Smith* v. *N. Y. Central R. R. Co.*, 24 N. Y. 224; *Bowen* v. *N. Y. Central R. R. Co.*, 18 N. Y. 410.)

*H. J. Tilden*, for Respondent.

The Court properly refused appellant's instruction. (*Smith* v. *N. Y. Central R. R. Co.*, 24 N. Y. 224; *Hegeman* v. *The Western R. R. Corporation*, 13 N. Y. 24; *Fecken* v. *Jones*, 28 Cal. 627; 2 Greenl. Ev., Sec. 222.)

By the Court, SANDERSON, J.:

The motion for a new trial was made upon three grounds: First—Excessive damages.   Second—Insufficiency of the evidence.   Third—Error in refusing an instruction asked by the defendant.

I. In cases of this character, as we had occasion to say in *Aldrich* v. *Palmer*, 24 Cal. 513, the law does not prescribe any fixed or definite rule of damages, but, from necessity, leaves their assessment to the good sense and unbiased judgment of the jury, and hence their verdict will not be disturbed on motion for a new trial, unless the amount is so large as to induce a reasonable person, upon hearing the circumstances, to declare it outrageously excessive, or as to suggest, at the first blush, passion, or prejudice, or corruption on the part of the jury.

The case shows that the injury sustained by the plaintiff, according to the uncontradicted testimony of her physician, was a fracture of the *ulna*, or large bone of the left arm at the wrist, accompanied by a displacement of the ligatures of the wrist, causing the *radius*, or small bone, to drop down so that the knuckle, or prominence, usually seen on the back or outward side of the wrist, now appears upon the front or

inward side, and that the *radius* will never come back to its place, although it may, after a long time, in a measure, become used to its new place; that the fracture was accompanied with violent inflammation and pain, which had not ceased at the time of the trial—nearly seven months after the injury was received—and would not, for months to come; that the wrist will never be as sound as before.

This shows not only a serious and painful injury which prevented the plaintiff, according to her testimony, from doing any work up to the time of the trial, except "a little light sewing," and might do so for an indefinite time to come, but it also shows a permanent disfigurement, and a serious and permanent injury. In view of such consequences, we think no reasonable man would pronounce a verdict for two thousand dollars so excessive as to suggest either passion, prejudice, or corruption on the part of the jury.

II. The testimony is claimed to have been insufficient in two particulars only: First, because it does not appear that the plaintiff gave any signal to the Conductor to stop the car. Second, because when asked by the Conductor if she wished to leave the car, she made no answer.

*a.* The case shows that she was on the point, or in the act of raising her hand to give the signal at the same time a signal was given by another passenger; but whether she gave the signal or not is a matter of no consequence whatever. Her injury did not result from a failure on the part of the Conductor to stop the car, but from his starting it while she was in the act of descending. He had stopped the car at the signal of Mr. Gunnison, and the desire of the plaintiff to leave the car was sufficiently indicated by her rising and following Mr. Gunnison and wife to the door.

*b.* To attach any importance to the fact that she failed to answer the Conductor when asked if she wished to leave the car, we must assume that the car had started before she attempted to leave it. If the car had started after Mr. Gunnison and his wife had descended, and before the plaintiff

had commenced, or was on the point of descending, she was negligent in not telling the Conductor that she wished to get out, and in not waiting until he had stopped the car before attempting to do so. But this state of the case is sustained only by the testimony of the Conductor, and is contradicted by the testimony of the plaintiff and Mr. and Mrs. Gunnison. Whether the case made by the Conductor or the case made by the plaintiff and Mr. and Mrs. Gunnison was the true one was for the jury to determine, and we think they determined it in accordance with the preponderance of the testimony, and not against it

III. The instruction which the Court refused was in these words: "The rule that passenger carriers are to be held to the exercise of the strictest diligence, is not to be understood by the jury as requiring of such carriers those particular precautions, as it is apparent *after* the accident might have prevented the injury."

This instruction was designed, as we are informed by counsel, "to tell the jury that the prudence and foresight required was such as would be exercised by a cautious man *before* an accident and *without knowledge* that it was about to occur; that the jury were not to understand the rule to be that, if they, having heard all the circumstances of the accident, *could now look back* and see that some other course of conduct would have prevented the accident, the defendant must be considered as being in the wrong, because it failed to adopt such conduct, or take such precaution."

Passenger carriers bind themselves to carry safely those whom they take into their coaches or cars, as far as human care and foresight will go, that is, for the utmost care and diligence of very cautious persons. (Story on Bailments, Sec. 601.) Whether in case of injury they have exercised such care and diligence, is to be determined in view of the facts and circumstances which existed at and prior to the accident, and they cannot be held not to have done so, because, after the accident, it may appear that it could have

75

been avoided by precautions which a very cautious person, not knowing that the accident was about to occur, would not have taken. But this form of expressing the rule is not more clear to our comprehension than the bare statement that the carrier must exercise the utmost care, diligence, and foresight of a very cautious person. The words "care, diligence, and foresight," imply a relation to future events, for no amount of care, diligence or foresight can avoid an event which has already happened. When it has been said that it is the duty of the carrier to exercise the utmost care, diligence and foresight of a very cautious person, it is very difficult to add anything, by way of further precision or clearness, and whoever undertakes it will be quite as likely to reach the opposite result as the one intended. Whatever can be added can, at best, be only a paraphrase of what has been already said with clearness and precision sufficient to answer all the calls of the dullest comprehension. Assuming, then, that the instruction means what is claimed for it, and nothing more, we are not prepared to say that the Court's refusal to give it was error.

But we are unable to understand the instruction as meaning only what counsel say it was intended to mean. We understand it as meaning something more. We understand its meaning to be, that the carrier is not required to adopt those particular precautions which, as it appears after the accident, might have prevented the injury, had they been taken. It certainly means that, if it means anything. It means more, then, than counsel intended. It means that the defendant was not bound to adopt those particular precautions which, as it is now apparent, would have prevented the injury—which is to say, that the defendant was not bound to adopt any precautions whatever, particularly those which would have prevented the injury. We think the language of the instruction not only bears this construction, but admits of no other. If we are right in this, counsel will readily perceive the truth of the suggestion made above, that it is not easy to make that clearer which is already clear, and

that he who undertakes the task is quite as likely to reach the opposite result.

Judgment and order affirmed, and remittitur directed to issue forthwith.