[S. F. No. 15995. In Bank.—August 1, 1938.]

CHARLES MUDRICK, a Minor, etc., Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

Wm. M. Abbott, Cyril Appel and Ivores R. Dains for Appellants.

Donahue, Richards & Hamlin, as *Amici Curiae,* on Behalf of Appellants.

Vincent W. Hallinan, Charles H. Fish and William F. Herron for Respondent.

CURTIS, J.—We adopt the following statement of facts and conclusions of law from the opinion of the District Court of Appeal rendered in this action when it was before said court.

"From a judgment awarding the plaintiff damages in the sum of $42,500, the defendants have appealed and have brought up a typewritten record.

"On September 18, 1934, the plaintiff, then thirteen years of age, was injured in an accident between Eighteenth and Nineteenth Streets on Castro. In the accident a street car operated by Market Street Railway Company, hereinafter referred to as railway, ran over the feet of the plaintiff and both legs were amputated below the knees. One of the defendants, G. Hageman, was the gripman and C. J. Heffernan was the conductor. It was the theory of the plaintiff that he boarded a Fillmore street car, paid his fare, took a transfer to a Castro street car, transferred at Church and Market, took a transfer and at Eighteenth and Castro he changed to the cable car. Continuing, he claimed that in doing so he took a position standing on the running board at the extreme front end of the right-hand side, and was facing to the south, that is to the front, and was holding on to a stanchion with his left hand. After the car had moved about half a block the plaintiff claimed that the car jerked several times, that he lost his grip, slid down the stanchion, fell off the car, and that his legs passed forward under the front wheel and were run over. On the other hand it was claimed by the defendants that immediately prior to the accident the plaintiff ran along the street by the side of the car, attempted to board it, slid and fell, and that his legs pressed forward under the right front wheel of the car and were run over.

"Castro street cable car number five, the car involved in this accident, left Eighteenth street and was traveling south in the direction of the Lick school. There were on board several adults, but the larger part of the passenger list was made up of students on their way to attend the Lick school.

"On the day of the accident Arthur B. Minaker, a police officer, called on the plaintiff at the hospital, asked him certain questions and later made a report to his superior officer. Either on the day of the accident or the following day, Mr. J. C. Bowman, principal of Lick school, called all students who had been on the car into the auditorium. He asked each child who claimed to know anything about the accident to write out and hand in a written statement. Many such statements were handed in. After the accident and before the trial representatives of the plaintiff called on various witnesses

and obtained written statements. During the same period representatives of the defendants called on several of the witnesses and obtained written statements. Many of those written statements were produced at the trial.

██ ''The defendants earnestly contend there is no testimony credible, or otherwise, from which it could be fairly inferred that there was any unusual jerking of the car of sufficient violence to cause plaintiff to fall therefrom, and giving full faith and credit to every scrap of testimony in the record pertaining to jerking, results in the inevitable conclusion that such jerking as did occur was not the cause of plaintiff's fall or injury. The plaintiff took the stand as a witness in his own behalf and testified that when car number five was at a standstill at Eighteenth and Castro he boarded the car and took the position hereinabove indicated. He testified regarding several jerks of the car and that finally he was thrown to the street, run over, and suffered the injuries complained of. Herbert McCulla testified that he boarded the car at the same time and place, took a position on the same side of the car about three feet behind the plaintiff and was holding on to the second stanchion. Continuing he gave testimony corroborating the plaintiff. Frank Petalas, another schoolmate, testified that he boarded the car at the same time and place, took a position at the extreme rear end on the right-hand side, and from that position he observed the plaintiff at all times, and saw him fall off the car into the street. Other schoolmates testified to other facts corroborating the plaintiff in part. The plaintiff did introduce some testimony that the car jerked. Taking that testimony in connection with the fact that the plaintiff fell or was thrown to the street, the determination of the issue was properly left to the jury. (McIntosh v. Los Angeles Ry. Corp., 7 Cal. (2d) 90, 96 [59 Pac. (2d) 959].) In this connection we understand the defendants to claim that the plaintiff did not say his fall and the jerking happened simultaneously. As we read his testimony we gather the same impression. The defendants contend the plaintiff testified the jerking occurred at one spot and that he fell off the car at a point 260 feet distant therefrom. That statement is true but the witness testified to several different jerks. He did not testify his falling and jerking were simultaneous events, nor did he testify to the contrary. However, taking all of the testimony given by all

of the witnesses produced by the plaintiff, the record was such that the jury was entitled to find that from the time the plaintiff boarded the car and until he fell into the street there were several jerks and that one of the jerks caused him to fall. That there was evidence to the contrary will be freely conceded. However, we think it is equally true there was sufficient evidence for the jury to base a finding and it may not be said, as a matter of law, that such evidence was incredible, improbable, or impossible.

"The next point made by the defendants is that the trial court erred in instructing the jury on the doctrine of *res ipsa loquitur*. It was the contention of the plaintiff, as set forth in his amended complaint, that the accident arose by reason of (1) the negligent operation of the car and (2) the negligent overcrowding of the car. To those claims, in his opening statement, the plaintiff attempted to add that the car (3) was old and obsolete, (4) that the car was undermanned, (5) that the railway jammed the school children into the car like sardines, (6) that when the car was overcrowded the cable would move the car by jerks, and (7) at such times the children would be jerked forward and backward. In his brief the plaintiff adds a further specification (8) that immediately before he fell the plaintiff called to the gripman to stop the car and the call was ignored. ■ Pointing to the fact that after alleging general negligence the plaintiff alleged specific negligence, to wit, overcrowding of the car, the defendants assert that there was no place in this case for the application of the doctrine of *res ipsa loquitur*. The point has been directly ruled against the contention of the defendants. (*McComas* v. *Al. G. Barnes Shows Co.*, 215 Cal. 685, 697 [12 Pac. (2d) 630].) The other contentions made by the plaintiff during the presentation of his case and by us numbered 3, 4, 5, 6, 7 and 8, if they had also been alleged in his pleading would have constituted other specific allegations of negligence and would not have changed the rule."

■ At the request of the plaintiff, the court gave three instructions upon the doctrine of *res ipsa loquitur*. These instructions are as follows, except that we have inserted in brackets the word "unusual" before the word, "operation" in two of said instructions, and before the word, "movement" in the other.

## "XVIII

"Proof of an injury to a passenger on the car of a common carrier, caused by the [unusual] operation of the car, raises the legal presumption that the injury was caused by the negligence of the carrier and casts upon the carrier the burden of proving that such injury was caused by some unavoidable casualty, or by some other cause which human care and foresight could not prevent or by the contributory negligence of the passenger, unless these facts be shown by evidence adduced by the plaintiff.

## "XIX

"When it was shown that a passenger is injured from some [unusual] movement of the car by those in charge of it or from something connected therewith or in the control of the defendant, the law presumes *prima facie* that the particular thing thus shown to have caused the injuries was due to the defendant's neglect, and the burden is then thrown upon the defendant to establish that such injury was not caused by its neglect but by some inevitable casualty or other cause which human care and foresight could not have prevented or by the contributory negligence of the passenger, unless such facts be shown by evidence adduced by the plaintiff.

## "XX

"If you believe from the evidence that the plaintiff became a passenger upon the cable car of the defendant Market Street Railway Company and that thereafter, owing to some [unusual] operation of the car by the persons in charge of it, he was injured, then the law presumes that he was injured through the negligence of the defendant Market Street Railway Company, and if you find that his injury was caused by some negligence, however slight, of defendant or of its agents or employees acting in the course and scope of their employment, and that the plaintiff was free from contributory negligence, then your verdict shall be in favor of the plaintiff and against the defendant Market Street Railway Company."

Defendants contend that these instructions as given incorrectly apply the rule of *res ipsa loquitur* in this case, and that the word, "unusual" should have been inserted before the words, "operation" and "movement" as indicated by the instructions as set forth above.

In support of their contention that these instructions are erroneous by reason of the omission of the word, "unusual"

as applied to the operation or movement of the car, the defendants mainly rely upon the cases of *Steele* v. *Pacific Elec. Ry. Co.*, 168 Cal. 375 [143 Pac. 718], and *Rystinki* v. *Central California Traction Co.*, 175 Cal. 336 [165 Pac. 952]. In the Steele case the plaintiff claimed to have been injured while she was stepping off of defendant's car, due to the negligent starting of the car by defendant's employees. Defendant denied the charge, and claimed that plaintiff was guilty of contributory negligence by attempting to step off of the car while it was in motion. The court gave the following instruction, the italicized portion of which was held to be erroneous: "You are instructed that contributory negligence on the part of the plaintiff cannot be presumed from the mere fact of injury, but must be proved. *On the other hand the proof of injury of plaintiff on a car of the defendant casts upon the defendant the burden of proving that the injury was occasioned by inevitable casualty or some other cause which human care and foresight could not prevent or by the contributory negligence of the plaintiff.*"

It will be noted that in this instruction the jury was told that the mere proof of injury to plaintiff on defendant's car cast upon the defendant the burden of proving the absence of negligence on its part, or contributory negligence. In that instruction nothing was said as to the injury being caused by the movement or operation of the car. For such omission the instruction was erroneous. It differed materially from the three criticized instructions in the present case which expressly referred to the injury as, "caused by the operation [or movement] of the car". This difference in the wording of the instruction in that case and those in the instant case was pointed out in the opinion in the Steele case in the following language: "It is not the law, as the argument of the plaintiffs implies, that the mere fact that a passenger is injured while aboard a car, or while alighting therefrom, creates a presumption that the injury was caused by want of care on the part of the defendant operating such car. It must first be shown that the injury came from the movement of the car by those in charge of it, or from something connected therewith, or in control of the defendant. When this is done, the law then presumes, *prima facie,* that the particular thing thus shown to have caused the injury was due to the defendant's negligence, and the burden is thrown upon

the defendant to disprove the *prima facie* case thus made. Such negligence is presumed because such accidents do not ordinarily happen if due care is used and because the defendant is usually better able than the plaintiff to show the actual truth of the matter." To the same effect is the case of *Wyatt* v. *Pacific Elec. Ry. Co.,* 156 Cal. 170 [103 Pac. 892].

It will thus be seen that *Steele* v. *Pacific Elec. Ry. Co., supra,* not only fails to support defendants' contention that the three instructions are erroneous by reason of the omission of the word, "unusual" therefrom, but it is express authority for upholding them against the particular attack which defendants make, for it is stated therein in plain words that if injury "come from the movement of the car by those in charge of it . . . the law then presumes, *prima facie,* that the particular thing thus shown to have caused the injury was due to the defendant's negligence, and the burden is thrown upon the defendant to disprove the *prima facie* case thus made".

It will be noted that the court in referring to the movement of the car which was the cause of the plaintiff's injury does not state that this movement must be "unusual" nor is there anything in the whole opinion that intimates in the slightest degree that the movement of the car in causing an injury to a passenger must be unusual before the rule contended for in said three instructions is applicable.

It is only fair to defendants to state that they do not rely upon the case of *Steele* v. *Pacific Elec. Ry. Co., supra,* standing alone to support their contention, but they contend that that case taken in connection with the case of *Rystinki* v. *Central California Traction Co., supra,* sustains them in their contention that these three instructions are erroneous.

In this last-named case, the instruction was as follows: "You are instructed that contributory negligence on the part of the plaintiff cannot be presumed from the mere fact of injury but must be proved. On the other hand, proof of the injury, *coupled with proof that it proceeded from a sudden, unusual or violent jerking, or swinging, or swaying of the car, while the plaintiff was preparing to alight,* casts upon the defendant the burden of proving that the injury was occasioned by inevitable casualty or some other cause which human care and foresight could not prevent, or by contributory negligence of the plaintiff." In commenting upon

this instruction, the court used the following language: "With the exception of the italicized portion, this is the same instruction condemned in *Steele* v. *Pacific Elec. Ry. Co.*, 168 Cal. 375–377 [143 Pac. 718], but the addition of the words in italics rescues the instruction from the vice of the court's direction to the jury which we there reviewed. It is true that the mere injury to the passenger does not place upon the carrier the duty of explanation, but the establishment of such injury, coupled with proof of coincident and causal collision, derailment, or other unusual happening to the car, does cast upon defendant the burden of exculpation as *indicated by the instruction*."

Defendants seize upon the word, "unusual" as used by the court in the above statement, and contend that the court has by its use determined that before the rule of *res ipsa loquitur* can be applied in a case where a passenger is injured by the movement of a street car, he must show that the movement was an unusual one. Evidently in the language used, the court simply followed the wording of the instruction which contained the word, "unusual". We have been cited to no other authority which holds that the movement of a car which inflicts injury upon a passenger must be shown to be an unusual movement before the rule of *res ipsa loquitur* can be applied. We have already referred to the cases of *Wyatt* v. *Pacific Elec. Ry. Co., supra*, and *Steele* v. *Pacific Elec. Ry. Co., supra*, where the true rule is announced and where there is no mention or any intimation which supports defendants' contention. Undoubtedly many other authorities could be cited if necessary, but we deem the above cases and the authorities therein cited to be sufficient for our present purpose.

An instruction alike in principle to these three criticized instructions was approved by the District Court of Appeal in the case of *Lynch* v. *Market Street Ry. Co.*, 130 Cal. App. 433, 438 [19 Pac. (2d) 1009], in which we denied a petition for a hearing. In that case the court goes into the question in great detail, citing many authorities, including those cited herein and many others, and holds that the instruction was proper, and affirmed the judgment in favor of plaintiff in said action.

The defendants cite the case of *McIntosh* v. *Los Angeles Ry. Corp.*, 7 Cal. (2d) 90, 95 [59 Pac. (2d) 959]. There is noth-

ing in that case that conflicts with anything that we have stated herein. No question was raised in that case involving the rule of res ipsa loquitur. We simply held there that a passenger upon a street or electric car assumed the ordinary risks arising from the operation of such car, and that any injury thus sustained could not be attributed to the negligent operation of the car, but that the carrier was liable for any injury sustained by a passenger as a result of an unusual movement of the car.

■ It is further contended that these three instructions are erroneous for the reason that the words "presume", and "presumption" are used therein instead of the words, "infer" and "inference". While it appears to be well settled that under the rule of res ipsa loquitur an inference and not a presumption arises on proof by plaintiff of the necessary facts (*Sweeney* v. *Erving*, 228 U. S. 233 [33 Sup. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905], *O'Connor* v. *Mennie*, 169 Cal. 217 [146 Pac. 674], *Dowd* v. *Atlas Taxicab & Auto Service Co.*, 187 Cal. 523 [202 Pac. 870], *Crooks* v. *White*, 107 Cal. App. 304 [290 Pac. 497], and *Ireland* v. *Marsden*, 108 Cal. App. 632 [291 Pac. 912]), these terms are often erroneously used interchangeably, and as conveying the same meaning. We find that many lawyers and courts as well make this same mistake. We question whether the ordinary layman, to say nothing of many members of our profession, clearly comprehends the difference in the meaning of these two expressions. While courts have frequently called attention to the erroneous use of the terms, "presume" and "presumption" in stating the rule of res ipsa loquitur, no decision has been called to our attention in which a judgment has been reversed by reason of the erroneous use of these words. While it may be error, the error, in our opinion, has not prejudiced the defendants in any of their rights.

■ The instruction as to contributory negligence was not erroneous. (*Brizzolari* v. *Market Street Ry. Co.*, 7 Cal. App. (2d) 246 [46 Pac. (2d) 783]; *Shannon* v. *Central-Gaither Union School Dist.*, 133 Cal. App. 124 [23 Pac. (2d) 769]; 19 Cal. Jur. 623.) In this instruction, the court admonished the jury that a carrier of passengers owes to children who are passengers on its cars a greater degree of care than it owes to adults. Such an instruction is proper. (10 Cor. Jur. 898; 4 R. C. L. 1161.)

It is further contended by defendants that the verdict, even after its reduction from $50,000 to $42,500 is excessive. This contention presents a most difficult question, made so principally by reason of the fact that the law furnishes no yardstick by which to measure damages for personal injuries. As a result there is no unanimity in the decisions of the various courts of this and other jurisdictions. The question may probably be rendered more simple if we confine our investigations to decisions of the courts of our own state, without extending our explorations into the myriad of decisions rendered in foreign jurisdictions.

While the law furnishes no accurate means of measuring damages in personal injury cases, the rule is well established respecting the power and duty of an appellate court in considering that subject and has been stated as follows: "The amount of damages in such cases is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and jury on the subject cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury'. (*Aldrich* v. *Palmer*, 24 Cal. 513, 516; *Wheaton* v. *North Beach & M. R. R. Co.*, 36 Cal. 590, 591; *Lee* v. *Southern Pacific Co.*, 101 Cal. 118 [35 Pac. 572]; *Howland* v. *Oakland etc. Co.*, 110 Cal. 513, 523 [42 Pac. 983]; *Swain* v. *Fourteenth St. Co.*, 93 Cal. 179, 185 [28 Pac. 829].)" (*Hale* v. *San Bernardino Valley Traction Co.*, 156 Cal. 713, 715 [106 Pac. 83]; *Lahti* v. *McMenamin*, 204 Cal. 415 [268 Pac. 644].)

In following this well-established rule, however, the courts should endeavor in ruling upon verdicts fixing the amount of damages in personal injury cases to establish some uniform standard applicable to cases of this character. This can only be done by reference to other cases in which damages have been fixed and determined in personal injury cases of the same, or like, general nature. By reference to our decisions, we find that verdicts have been sustained in the following cases: $20,000 for the loss of one foot, *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 43 [297 Pac. 884]; $20,000 for serious injury to one foot, *Kraft* v. *Acme Stevedore Co.*, 112

Cal. App. 653 [297 Pac. 585], hearing denied by this court; $28,191 for fracture of one leg and crushing of one foot, *Bisinger* v. *Sacramento Lodge No. 6,* 187 Cal. 578 [203 Pac. 768]; $25,000 reduced from $35,000, loss of one leg slightly below the knee, *Jaques* v. *Southern Pacific Co.,* 8 Cal. App. (2d) 738, 741 [48 Pac. (2d) 63], hearing denied by this court; $50,000 serious injury to brain, *Kirschbaum* v. *P. H. McCarthy, Jr.,* 5 Cal. (2d) 191 [54 Pac. (2d) 8]; $70,000 reduced from $100,000 for loss of both legs and one arm, *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513]; $100,000 for serious brain injury to officer in navy with life expectancy of 32½ years, *McDonald* v. *Standard Gas Engine Co.,* 8 Cal. App. (2d) 464, 473 [47 Pac. (2d) 777]. To these might be added many others of a similar character. ■ It will be noted that in one case a verdict of $20,000 for a loss of one foot was sustained and in another case a verdict of $25,000 for loss of one leg slightly below the knee, and in still another, a verdict of $20,000 for serious injury to one foot was sustained. In the other cited cases, the verdicts are still larger. In comparison with these amounts, it cannot be said that the present judgment for $42,500, in favor of a boy, thirteen years of age, in good health, for the loss of both legs below the knees is out of line with the former amounts sustained by us in actions of this character. The size of the verdict in this case was undoubtedly given the most careful consideration by the trial court as evidenced by its action in reducing the verdict to the sum of $42,500. In view of the very serious injury sustained by plaintiff, and taking into consideration the former adjudications of this court respecting verdicts in personal injury cases similar to that in the instant case, we cannot say that the amount of the judgment in this case is excessive.

■ Finally it is contended that the counsel for the plaintiff was guilty of prejudicial misconduct. The specifications of misconduct include remarks made by counsel in his opening statement before the jury, in the cross-examination of witnesses during the trial, and in his opening and closing address to the jury after the close of the evidence. Plaintiff objects to our consideration of any statement purported to have been made by counsel in his opening or in his closing argument to the jury on the ground that these statements are not properly before us. The re-

porter's transcript contains counsel's opening statement to the jury, the evidence taken at the trial including the criticized remarks of counsel during the cross-examination of witnesses, but does not contain his opening or closing argument before the jury. It does, however, contain the proceedings before the court on motion for a new trial which includes an affidavit of counsel for the defendants purporting to set forth the material parts of the opening and closing argument of plaintiff's counsel, and an affidavit of plaintiff's counsel in which he denied making many of the statements included in opposing counsel's affidavit, and also attempted to explain many of the other statements made by him and included in his argument before the jury as called forth by the argument of defendants' counsel.

We must assume as the trial judge denied defendants' motion for a new trial that he was not satisfied with the correctness of the allegations in the affidavit of defendants' counsel and was of the opinion that the explanation given by plaintiff's counsel as to the reasons that prompted certain portions of his closing statement were well founded. In this state of the record, we find it impossible to properly pass upon those assignments of misconduct of plaintiff's counsel which are based upon statements made by him in his opening and closing argument to the jury. This leaves only the remarks of counsel for plaintiff in his opening statement to the jury, and remarks made by him during the progress of the trial.

It is contended that in his opening statement plaintiff's counsel represented to the jury the existence of certain facts which plaintiff was prepared to prove, but which plaintiff did not attempt to prove, and which he knew at the time they were made could not be proved. These statements were objected to by the defendants' counsel and they referred in the main to the equipment of the defendant corporation being old and obsolete; that the company undermanned its cars at the time and place of the accident, and failed to maintain proper guards to prevent a passenger thrown from a car from going under its wheels. A few other and similar statements were likewise made by counsel. The practice indulged in by plaintiff's counsel has frequently been condemned by the courts, and it is held that where it is clearly made to appear that prejudice has resulted from such improper statement, a new trial will be awarded. (*Posell*

v. *Herscovitz*, 237 Mass. 513 [130 N. E. 69], and *Baker Matthews Lumber Co.* v. *Lincoln Furniture Mfg. Co.*, 148 Va. 413 [139 S. E. 254].) The trial court instructed the jury that there was no evidence that the equipment of the company's car was not of standard kind and character. It also upon denying the motion for new trial necessarily held that the remarks complained of resulted in no serious prejudice to the defendants. While we are not willing to place our stamp of approval upon such conduct, under all the circumstances before us, we are not prepared to say that the defendants were prejudiced by these remarks of counsel.

 Respecting the misconduct of counsel occurring during the trial and while he was cross-examining witnesses, the defendants cite us to five separate occasions in which they claim that counsel transgressed the rules of propriety. On the first occasion, defendants objected to a line of questions asked one of the defendants' witnesses by plaintiff's counsel. The objection was sustained and no request was made that the court direct the jury to disregard the evidence and no such direction was given. On two occasions, the court struck out the evidence objected to and instructed the jury to disregard the same. The two other instances concern matters of such small importance that even if the remarks of counsel were improper they could not have had any material effect on the jury. The situation before us is much like that which confronted this court in a former case in which it was said: "The trial court denied a motion for a new trial based upon the ground, among others, of misconduct of plaintiff's attorney. In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to which we have referred. Conceding some of the statements made by counsel, whatever the provocation thought by him to exist therefor, were improper, we are satisfied that this conclusion of the trial judge should not be disturbed by an appellate court. The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing it is plainly wrong. This we think may not fairly be said here." (*Lafargue* v. *United Railroads*, 183 Cal. 720, 724 [192 Pac. 538].)

We are satisfied that none of the objections to the judgment raised by defendants is of such a serious character as to have materially prejudiced the defendants in the trial of the case and for that reason conclude that the judgment should be affirmed, and it is so ordered. .

Shenk, J., Waste, C. J., and Langdon, J., concurred.

Rehearing denied. Edmonds, J., and Houser, J., voted for a rehearing.