Ana R. Costas **RODRIGUEZ**, in her own behalf and as mother with "patria potestas" over the child Danielle Marie Conway, Plaintiff,

v.

**AMERICAN AIRLINES, INC.,**
Defendant.

Civ. No. 869–71.

United States District Court,
D. Puerto Rico.

Feb. 8, 1974.

Edwin V. Rosas-Bayonet, San Juan, P. R., for plaintiff.

Francisco Ponsa Feliu, San Juan, P. R., for defendant.

OPINION AND ORDER

TOLEDO, Chief Judge.

This diversity action is before this Court pursuant to defendant's motion for summary judgment, wherein it is alleged that there is no genuine issue as to any material fact, and that it is entitled to a judgment as a matter of law.

The decisive issue before the Court is whether plaintiff's complaint can stand, notwithstanding the Passenger Tariff of defendant approved by the Civil Aeronautics Board. This tariff includes a provision which deals with the acceptance of children for transportation. Rule 25 of the Tariff reads as follows:

".25 ACCEPTANCE OF CHILDREN

(A) Accompanied. Children under 12 years of age are accepted for transportation when accompanied on the same flight and in the same compartment by a passenger at least 12 years of age.

(B) *Unaccompanied.* Children under 12 years of age not accompanied on the same flight and in the same compartment by a passenger 12 years of age or over are accepted for transportation only under the following conditions:

| Age of Child at last birthday | Carrier | Via all classes of service |
|---|---|---|
| Under 5 years of age | All Carriers | Not accepted under any conditions. |
| * 5, 6 or 7 years of age | All Carriers | Accepted only for on-line transportation and only when through service is provided without change of aircraft. The child must be brought to the airport of departure by a parent or responsible adult who remains with the child until enplaned and who must furnish carrier with satisfactory evidence that the child will be met by another parent or responsible adult upon deplaning at his destination. Not accepted if the flight on which the child holds a reservation is expected to terminate short of, or by-pass his destination. |
| 8 years of age or over | All Carriers | (1) Accepted for on-line transportation. (2) Accepted for interline transportation only provided space has been confirmed to the first point of stop-over or to a point where the child is to be met by a parent or responsible adult upon deplaning. |

(C) *Fare.* The fare applicable to the transportation of children will be determined in accordance with Rule 115 (Children's Fares).

* Applicable dispositions to this case.

(D) *Responsibilities of Carrier.* Carrier will assume no financial or guardianship responsibilities for unaccompanied children beyond those applicable to an adult passenger."

STATEMENT OF FACTS:

The complaint filed by the herein plaintiffs include factual allegations which, for the purpose of the present consideration, are not disputed by the defendant. Said allegations as supplemented by affidavits filed by plaintiffs, are the following:

1) William D. Conway and Ana R. Costas Rodríguez were married in 1964 at Ponce, Puerto Rico.

2) That in said marriage a child named Danielle Marie Conway was procreated in June 25, 1965.

3) That William D. Conway and Ana R. Costas Rodríguez were divorced and that the latter person has at all times exercised the custody and "patria potestas" of said child as per Court Decree entered.

4) That during the period of vacation months of July and August 1971, plaintiff Danielle Marie Conway, was sent to Dallas, Texas where Mr. William D. Conway resides.

5) That on August 28, 1971, the girl was forwarded back to her mother in Puerto Rico from Dallas, Texas in American Airlines Flight Number 98, coupon issued on August 26th, Serial Number 001–12–4–313632 of total value paid for of $131.65.

6) That on said mentioned date the plaintiff child, Danielle Marie Conway was sent to Puerto Rico alone under the sole responsibility of American Airlines, its agents and employees in accordance to the terms agreed on August 26, 1971, with said mentioned defendant.

7) That the defendant assumed all the responsibility regarding the custody and care and delivery of the said mentioned plaintiff child to her mother in San Juan, Puerto Rico.

8) That plaintiff Ana R. Costas Rodríguez was awaiting for the delivery of her child by defendant company on a fixed day, fixed hour and fixed number of flight, at San Juan International Airport.

9) That to the astonishment of plaintiff Ana R. Costas Rodríguez, the then six year old girl was not delivered at the Airport of San Juan, Puerto Rico, at the hour of flight above mentioned and none of the personnel of American Airlines could give facts regarding the whereabouts of the said child.

10) That the chief stewardess in charge of the delivery of the child in San Juan, Puerto Rico and the others, denied to plaintiff Ana R. Costas Rodríguez having any child under their custody.

11) That in view of the circumstances, plaintiff Ana R. Costas Rodríguez made a call to Dallas, Texas to the father of the child regarding the non-delivery and the whereabouts of the girl.

12) That the mental anguish of plaintiff Ana R. Costas Rodríguez went "in-crescendo" in view of the fact that her exhusband and father of the child told her that he personally delivered the girl to the chief stewardess of that particular flight, who acting within the scope of her employment accepted the responsibility of delivery of the child to her mother at San Juan, Puerto Rico.

13) That papers with proper identification and passenger's ticket stating the fact that plaintiff Danielle Marie Conway was an unaccompanied child were prepared and affixed to her outer garment.

14) That the child was later boarded on an Eastern Airlines flight bound for San Juan, Puerto Rico.

Were we to synthesize the factual allegations made by the plaintiffs, said allegations would be the following: On August 28, 1971, coplaintiff Danielle Marie Conway, a minor child of six years, was forwarded unaccompanied, in American Airlines flight number 98. The flight's route established a departure from Dallas, Texas, an intermediate stop at Kennedy Airport in New York and a

final destination stop in San Juan, Puerto Rico. Both defendant and plaintiffs complied with Rule 25, for unaccompanied children, except that defendant, American Airlines, Inc., upon making the intermediate stop at Kennedy Airport in New York disembarked the child and left her alone and neglected at the airport; thus failing to deliver the child to her mother as scheduled. The child was later found in Kennedy Airport and boarded on an Eastern Airlines flight bound for San Juan, Puerto Rico.

## STATEMENT OF LAW

It is the contention of the defendant, American Airlines, Inc., that Section D of Rule 25 of the Passengers Tariff of American Airlines, approved by the Civil Aeronautics Board, relieves it from all responsibility. The defendant alleges that this provision limits the liability of the carrier in the same way that the rules dealing with the carriage of baggage and goods limit the liability of the Airline. To this effect, it relies on the cases of Lichten v. Eastern Air Lines, Inc. (2 Cir. 1951), 189 F.2d 939; Vogelsang v. Delta Air Lines, Inc. (2 Cir. 1962), 302 F.2d 709, cert. den. 371 U.S. 826, 83 S.Ct. 46, 9 L.Ed.2d 65 (1962); Randolph v. American Airlines, 103 Ohio App. 172, 144 N.E.2d 878 (1956); Firpi v. Pan American World Airways, 89 D. P.R. 197 (1963); Bird v. Eastern Airlines, Inc., 99 D.P.R. 955 (1971). These cases stand for the proposition that the tariffs in effect are and form part of the contract of transportation between plaintiffs and defendant, and that, as such, they constitute the law between the parties and, accordingly, limit the responsibilities of the carrier.

We believe it is proper to briefly analyze a few of the cited cases. The case of Vogelsang v. Delta Air Lines, Inc., supra, dealt with a suitcase full of jewelry which was lost on transit. The defendant had failed to declare the high value of this suitcase. At that time, Delta Air Lines, Inc. had in effect a tariff, filed and approved by the Civil Aeronautics Board, which limited the loss to $100.00. The Court of Appeals ruled that the tariff applied even if there was wilful misconduct on the part of the Airline. The cases of Lichten v. Eastern Air Lines, Inc., supra, and Firpi v. Pan American Airways, Inc., supra, likewise, deal with suitcases containing jewelry.[2] In both cases the plaintiff did not declare the jewelry and in both cases the court upheld the validity of the tariff which limited the liability of the Airline.[3]

It is noteworthy to point out that these cases involve baggage and the interpretation of the validity of a tariff limiting the liability of an airline. It is reasonable to insist that a passenger declare the contents of a highly valuable suitcase since otherwise it would be very simple for anyone to defraud the airlines.

The case of Killian v. Frontier Airlines, Inc. (D.C.Wyo.1957), 150 F.Supp. 17, involved the transportation of flowers which had to be unloaded at a point prior to their destination and were consequently damaged. The airline had in effect a tariff which exempted it from liability in these cases and the court

2. The case of Bird v. Eastern Airlines, Inc., supra, also cited by defendant, involved damages (expenses incurred in buying personal effects, loss of time and great inconveniences) alleged to have stemmed from the temporary loss (four days) of plaintiff's personal suitcases, on which no jewelry was involved. The Supreme Court for the Commonwealth of Puerto Rico reasserted the principles of law it expressed in Firpi v. Pan American Airways, supra.

3. For other recent cases dealing with the claims originating from loss of jewelry in transit see, e. g. Tishman & Lipp, Inc. v. Delta Airlines, Inc. (D.C.N.Y.1967), 275 F. Supp. 471, 473, affd. (2 Cir. 1969), 413 F.2d 1403; Progress Jewelry Co. v. Northeast Orient Airlines, Inc. (D.C.N.Y.1969), 300 F. Supp. 335, 337; Mao v. Eastern Airlines, Inc. (D.C.N.Y.1970), 310 F.Supp. 844, 846.

found it to be applicable. The Court stated at page 19, that:

"It is well established that a carrier's tariff on file with the proper government agency has an effect equivalent to law until declared unlawful by the agency and that the provisions of the tariffs establish the legal relationships of the parties."

Again, the above is a case that dealt with the transportation of an inanimate object.[4] At this point, we feel we should emphasize that in the instant case we are dealing with the transportation of a human being, namely a six year old female child.

So that we may better understand certain provisions and regulations of the Civil Aeronautics Board, we shall rapidly and succinctly discuss what the Common Law has to say in reference to the transportation of an unescorted child.

The legal encyclopedia American Jurisprudence 2d, states that: "As a rule, a common carrier is required to devote more attention and care to an infant passenger than to an adult passenger. Whether or not this is termed a high degree of care, in the technical sense, it is generally held that this relationship demands a special care proportionate to the age of the child and its ability or lack of it, to care for itself."[5]

In the case of Brizzolari et al v. Market St. Ry. Co., 7 Cal.App.2d 246, 46 P. 2d 783 (1935), the court dealt with a negligent street car conductor that was transporting a seven year old girl. The child was alighting from the vehicle but the conductor never came to a full stop. The court stated at page 784, that: "It is settled law that a carrier owes a greater quantum of care to a child of tender years accepted by it as a passenger than it would to an adult." The

case of Shannon v. Central-Gaither U. School Dist., 133 Cal.App. 124, 23 P.2d 769, dealt with a ten year old boy who traveled as a passenger in a school bus. In affirming a judgment against the school district the court said: "It is ordinarily necessary to exercise greater care for the protection and safety of young children than for an adult person who possesses normal and mature faculties."; and in the case of Tipton v. Willey, 47 Ohio App. 236, 191 N.E. 804 (1934), the court stated at page 806, that: "* * * Certainly the fair implication of this [referring to a case where the passenger was an adult as opposed to a child] is that, if the carrier accepts for transportation an immature child, its duty would be different and greater than if an adult were the passenger, and such is the rule generally."

■ These cases stand for the proposition that at common law a carrier transporting passengers for hire, owes a greater quantum of care to a passenger of tender age than he owes to a normal adult person.

The record before the Court reflects that American Airlines presented a brief "In the matter of the Investigation of Full Adult Fares for Unaccompanied Children" before the Civil Aeronautics Board, in a case that involved most of the airlines of the United States, Docket No. 7299, dated March 19, 1956. At that time, defendant stated at page 7, that: "It is thus apparent that there is no cost justification for a reduced fare for unaccompanied children. However, the examiner will note that the evidence in this case overwhelmingly shows that it *costs more* to carry the unaccompanied child than it costs to transport the full-fare adult or, indeed, the accompanied child.[6]

4. See also Blair v. Delta Airlines, Inc. (D.C. Fla.1972), 344 F.Supp. 360.

5. 14 Am.Jur.2d, Carriers Section 963, page 387. See also Mudrick v. Market St. R. Co., 11 Cal.2d 724, 81 P.2d 950, 118 A.L.R. 533; Sheridan v. Brooklyn City and N. R. Co., 36 N.Y. 39; Cartwright v. Graves, 182 Tenn. 114, 184 S.W.2d 373.

6. Such statement was justified by stating that: "In flight the child must be assisted with his meals (Tr. 83), assisted in the event of air sickness (Tr. 83; Ex. U–2, p.

In the same C.A.B. Investigation, it was additionally stated that: "The carriers typically formulate detailed regulations and procedures to safeguard unaccompanied children, and reservations personnel are put to a substantial additional burden in explaining such regulations and procedures to any person who arranges the passage of an unaccompanied child. A record must be made of the name, address, and telephone contact of the person who is to meet the child at the flight destination. A reservations or flight employee prepares an identification card and affixes it to the child's outer garment. At the airport of origin an airline employee personally conducts both the child and its parent or guardian to the aircraft, introduces them to the stewardess, and identifies for the stewardess the person who will meet the child at destination. The station of origin must transmit to the station of destination a message informing of the child's passage and identifying the person who will assume custody at destination. *During the flight, the stewardess becomes, in effect, the governess responsible for the child's conduct and well being. Special surveillance must be exercised at intermediate stops to keep the child safe and to be sure that he reboards the plane before departure.* The custodial duties are enlarged if a change of plane is required, for the child must not only be accompanied to the connecting plane, *but must be closely supervised during the entire layover period.* At destination, either a flight crew member or a station agent must assume full charge of the child until he is delivered to the person named in the instructions given the airline at the beginning of the journey." (emphasis added).[7]

Furthermore, it was also stated at page 423, that: "The airline, throughout the period it has charge of an unaccompanied child, must exercise a high degree of custodial judgment. Any failure to guard the child as closely as his own parents might be expected to, would inevitably expose the carrier to legal liability. An airline that undertakes to carry an unaccompanied child assumes the burden of providing a skilled guardianship."

The tariffs involved herein are to be filed with the C.A.B. and are to show all rates, fares, and charges for air transportation and, to the extent required by regulations, the practices and services in connection with such air transportation. In relation to this, Section 1373(a) of the Federal Aviation Act, Title 49, United States Code, states that: "Every air carrier and every foreign air carrier shall file with the Board, and print and keep open to public inspection, tariffs showing all rates, fares, and charges for air transportation between points served by it, and between points served by it and points served by any other air carrier or foreign air carrier when through service and through rates shall have been estab-

---

2), assisted on trips to the lavatory (Tr. 83), assisted with his clothing and his seat belt (Tr. 70), entertained (Tr. 70), assisted with his baggage (Tr. 71), restrained from walking around the cabin in rough weather (Ex. AA–1, p. 3), kept away from doors and emergency exits (Ex. AA–1, p. 3), and supervised to prevent the disturbance of other passengers (Tr. 83). In the event of delay at an intermediate point, an employee must constantly supervise the child (Tr. 8304). When a flight is cancelled short of destination necessitating an overnight layover or travel onward by surface carrier, additional responsibility is placed on the carrier (Tr. 64–66, 84, 88–89, 117–119; Ex. U–2, p. 3). Additional work and responsibility are involved when the unaccompanied child is ar-

riving and departing (Tr. 62–64), when he must change flights (Tr. 62–64), when he must change carriers (Tr. 70–71). Telegrams and long distance calls frequently are required in connection with unaccompanied children (Tr. 214; Ex. U–1, p. 1).

In addition, some children present particular behavior problems which must be dealt with so as not to disturb other passengers. (Tr. 72–73, 85–87). Sickness of the unaccompanied child enroute requires care that would not be required by the accompanied child or an adult (Tr. 87, 93–94; Ex. U–2, pp. 5–6).

7. "Investigation of Full Adult Fares for Unaccompanied Children", 24 C.A.B. 408 (1956), at page 422.

lished, and showing to the extent required by regulations of the Board, all classifications, rules, regulations, practices, and services in connection with such air transportation. Tariffs shall be filed, posted, and published in such form and manner and shall contain such information as the Board shall by regulation prescribe; and the Board is empowered to reject any tariff so filed which is not consistent with this section and such regulations. Any tariff so rejected shall be void . . ."

Strict observance of its tariffs is required from the carrier, by Title 49, United States Code, Section 1373(b), which states that:

"No air carrier or foreign air carrier shall charge or demand or collect or receive a greater or less or different compensation for air transportation, or for any service in connection therewith, than the rates, fares, and charges specified in its currently effective tariffs; and no air carrier or foreign air carrier shall, in any manner or by any device, directly or indirectly, or through any agent or broker, or otherwise, refund or remit any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities, with respect to matters required by the Board to be specified in such tariffs, except those specified therein. * * *".

Additionally, Title 49, United States Code, Section 1472(d) makes it a criminal offense to depart from the filed tariffs.

Additionally, it is the carrier's duty to establish just and reasonable tariffs. In relation to this, Section 1374(a) of Title 49, United States Code, provides that:

"It shall be the duty of every air carrier to provide and furnish interstate and overseas air transportation, as authorized by its certificate, upon reasonable request therefor and to provide reasonable . . . individual and joint rates, fares, and charges, and just and reasonable classifications, rules, regula-

tions, and practices relating to such air transportation; and, ' . . . equitable divisions thereof as between air carriers participating therein which shall not unduly prefer or prejudice any of such participating air carriers."

The Federal Aviation Act also states [8] that the Board shall consider:

"* * *

(b) The regulation of air transportation in such manner as to recognize and preserve the inherent advantages of, *assure the highest degree of safety in*, . . ., such transportation, . . .

* * * * * *

(e) *The promotion of safety in air commerce*; and . . ." (emphasis added).

In Gabel v. Hughes Air Corp. (D.C. Cal.1972), 350 F.Supp. 612, the Court considering a case that arose out of a collision between a passenger airline and a military jet, said, at page 614–615, that:

"After review of all of the authorities cited by the parties and those independently found by the Court, it is concluded (1) that the Federal Aviation Act of 1958 (72 Stats. 731 et seq., 49 U.S.C., Section 1301 et seq.), imposed the duty upon the defendant carrier to perform its services 'with the highest possible degree of safety in the public interest'. (49 U.S.C., Section 1431(b) and (2)) so do the regulations promulgated by the Federal Aviation Administration to carry out the terms of the Act, viz, Title 14, Code of Federal Regulations, Sections 91.9, 91.65, 91.67 and 91.71, * * *.

It is further concluded that a violation of a duty imposed by the Act creates a cause of action in favor of one who is injured or damaged by the death of a person resulting from such violation; * * *."

Under the law, the Board is given limited powers, especially in reference to initial tariffs, as it can only suspend a new tariff from going into effect if the

---

8. Title 49, United States Code, Section 1302.

Board thinks that it is inconsistent with the requirements of the Act. However, once the tariff is in effect it can then determine whether it will be unreasonable, unjust or unduly preferential.

The Board in 1954 required, by order dated 10 November and published in 19 Fed.Reg. 7387, that carriers eliminate from their tariffs all rules, regulations or provisions limiting or conditioning carrier liability for personal injury or death. The Board in the explanatory statement in the notice of the proposed rule making for this order stated:

"* * * that after the effective date of this regulation, rules of this nature would be subject to rejection as not consistent with the Civil Aeronautics Act and the Board's regulations thereunder."

It is further stated in 19 Fed.Reg. 7387, that:

"The Board in adopting the amendment stated:

'After the effective date of this amendment carrier tariffs, to the extent they contain limitations on or conditions relating to carrier liability for personal injury or death, will be mere surplusage and of no effect as tariffs.' "

This order was incorporated into the Code of Federal Regulations and 14 C.F.R. 221.38(h) still reads:

"Personal liability rules. No provision of the Board's regulations issued under this part or elsewhere shall be construed to require on and after March 2, 1954, the filing of any tariff rules stating any limitation on, or condition relating to, the carrier's liability for personal injury or death. No subsequent regulation issued by the Board shall be construed to supersede or modify this rule of construction except to the extent that such regulation shall do so in express terms."

The foregoing reflects that limitation of liability for personal injury (bodily or mental) is expressly disallowed. At this point, we reach the decisive issue in this case and we can phrase it as follows: Does the doctrine of Primary Jurisdiction as applied to the Civil Aeronautics Board bar this Court from understanding in this case?

■ The doctrine of primary jurisdiction was first enunciated, with respect to tariffs in Texas and P. R. Co. v. Abiline Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907); a case in which the plaintiff wanted to obtain relief from freight rates which he believed to be unreasonable. The Supreme Court held that relief could not be obtained without reference to any previous action by the Interstate Commerce Commission. The doctrine of primary jurisdiction forces a court to abstain in deference to the action or finding of a specialized administrative agency statutorily authorized to regulate the field.[9] This doctrine has been reasserted in the cases of Robinson v. Baltimore and O. R. Co., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288 (1912); Northern P. R. Co. v. Solum, 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed. 1221 (1918); United States Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932), among others.

The cases of Jones v. Northwest Airlines, 22 Wash.2d 863, 157 P.2d 728 (1945) and Adler v. Chicago and Southern Air Lines, 41 F.Supp. 366 (D.C.Mo. 1941), introduced the doctrine of primary jurisdiction into the field of aviation. In the Adler case the District Court discussed the aforementioned doctrine as it had been applied to the Interstate Commerce Act and the Shipping Act and then held that since the Civil Aeronautics Act was similar to these two acts, said doctrine should also apply to it. The court said at page 367 that:

"* * * this court is without jurisdiction to grant any relief to the plaintiff in the absence of a finding by that board that the practice complained of is unlawful or unreasonable, and until the plaintiff is able to allege in a complaint

---

9. See Barnhard, Primary Jurisdiction and Administrative Remedies, 30 Geo.L.J. 545 (1942).

that he has exhausted all of his remedies before that board."

Furthermore, in addition to the Jones and Adler decisions, the cases of Trammell v. Eastern Air Lines, Inc., 136 F. Supp. 75 (D.C.S.C.1955) and Furrow and Co. v. American Airlines, Inc., 102 F.Supp. 808 (D.C.Okl.1952), stand for the proposition that the C.A.B. has primary jurisdiction as to whether or not tariffs are reasonable.[10] The Board must initially determine whether or not a tariff is unreasonable, unjust, unjustly discriminatory, unduly preferential or unduly prejudicial, these being the only grounds for attack upon the validity of a tariff as specified in Title 49, United States Code, Section 1482(d).

However, various cases have held that in certain instances the Board does not have "exclusive primary jurisdiction." The three leading cases that have so held are: Fitzgerald v. Pan American World Airways (2 Cir. 1956), 229 F.2d 499; Wills v. Trans World Airlines (D.C.Cal. 1961), 200 F.Supp. 360; Mortimer et al. v. Delta Air Lines (D.C.Ill.1969), 302 F.Supp. 276. In *Fitzgerald* the plaintiffs were negroes who alleged that although they held continuing reservations to Sydney, Australia, they had been unjustly discriminated against by the defendant because of their race and color when they were not allowed to continue their flight to said destination, after arrival in Hawaii. The plaintiffs in this case attacked the primary jurisdiction of the Board and the Court held Title 49, United States Code, Section 484(b) created a duty, on the part of the airline, to not discriminate and that Section 622(a) of the same Title makes it a federal crime to violate the aforementioned section. The Court found that the sole remedy for violation of any of the provisions of the act was not to be found in Section 1482(d) since this Section empowers the Board to issue only prospective orders and these orders offered no

redress to one who has suffered injury. The Court of Appeals further held that the Act created a new federal right and reversed the District Court. The Court stated at page 502 of 229 F.2d, that: "This is not a case where the Board has 'exclusive primary jurisdiction': (1) The Civil Aeronautics Act, unlike the Interstate Commerce Act or the Shipping Act, confers no power on the administrative agency to grant reparation in money for past misconduct of the carrier. (2) The Board has no power to approve violations of Section 484(b). (3) Nor has it purported to do so." The cases of *Wills* and *Mortimer* are similar to *Fitzgerald* and both District Courts held that the Board did not have primary jurisdiction in these cases and that a private civil action could be implied from Section 484(b) of the Act.

It is important to mention that these three cases involved a violation, by the part of the airline, of its own tariff. In the instant case we are not dealing with a violation of a tariff but with the alleged unreasonableness of one and as we have seen in these cases, we are barred by the doctrine of primary jurisdiction.

However, we need not enter into the territory of the Board since we have seen that by Order dated November 10, 1954 and published in 19 Fed.Reg. 7387 and later incorporated into 14 C.F.R., Section 221.38(n), the airline is expressly disallowed from limiting its liability for personal injury or death and the case of Boston and M. R. Co. v. Piper, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820 (1918), stands for the proposition that where a tariff is not statutorily authorized (and in our case it is expressly disallowed) and where the Board has exceeded its power by accepting it, the doctrine of primary jurisdiction has no application and the plaintiff can proceed directly in court. The case of Chicago, M., St. P. and P. R. Co. v. Alouette Peat Products (9 Cir. 1957), 253 F.2d 449,

10. See also Lichten v. Eastern Air Lines, Inc., supra; Vogelsang v. Delta Airlines, Inc., supra; Randolph v. American Airlines, Inc., supra; Firpi v. Pan American World Airways, supra; Bird v. Eastern Airlines, Inc., supra.

held that the doctrine enunciated in *Piper* was also applicable to rates. The Court of Appeals cited *Piper*, at page 456 to uphold its decision. It then stated that: "While this provision was in the bill of lading, the form of which was filed, with the Railroad Company's tariffs with the Interstate Commerce Commission, it gains nothing from that fact. The legal conditions and limitations in the carriers bill of lading duly filed with the Commission are binding until changed by the body (Citing case); but not so of conditions and limitations which are, as is this one, illegal, and consequently void."

The same thing may be said of Rule 25(D) of the tariff filed by American Airlines with the Civil Aeronautics Board. This being the case, this Court finds that it has jurisdiction and concludes that defendant's motion for summary judgment must be dismissed.

Wherefore, it is hereby ordered, adjudged and decreed, that defendant's motion be and the same is hereby denied.