[Civ. No. 8137. Third Dist. Dec. 17, 1954.]

BURDETTE G. RISLEY, a Minor, etc., et al., Respondents, v. EARL WHITNEY LENWELL et al., Appellants.

VIOLET R. RISLEY, Respondent, v. EARL WHITNEY LENWELL et al., Appellants.

JAY D. HUMBIRD, a Minor, etc., Respondent, v. EARL WHITNEY LENWELL et al., Appellants.

612

Leland J. Propp, Archibald D. McDougall and Frank A. Morrow for Appellants.

C. Ray Robinson, John L. Larue and William B. Boone for Respondents.

SCHOTTKY, J.—Respondents Burdette G. Risley, Violet R. Risley and Jay D. Humbird each suffered personal injuries when a portion of a load of lumber fell from a logging truck onto or in front of the automobile in which they were riding when the vehicles, approaching from opposite directions, were passing each other on a public highway. Each of the said respondents brought a separate action. Burdette and Violet Risley were husband and wife, and Burdette, being also a minor, appeared by his mother and general guardian, Hilda S. Risley, who also sued in her own right for recovery of Burdette's medical expenses. The actions were consolidated for trial and tried by a jury which returned verdicts against defendants Lenwell, Bennett, Raddatz and Simplot Investment Company, a corporation, and in favor of Burdette G. Risley in the sum of $125,000, in favor of Hilda S. Risley in the sum of $1,753.35, in favor of Violet R. Risley in the sum of $75,000, and in favor of Jay Humbird in the sum of $2,000. During the trial the actions were dismissed as to a fifth defendant, Cal-Ida Lumber Company, a corporation. Motions for new trial on the part of all four defendants were denied, and defendant Simplot Investment Company has appealed from the judgments and from the order denying its motion for judgment notwithstanding the verdict. Defendants Lenwell and Raddatz have appealed from the judgment, but the judgments are final as to defendant Bennett who did not appeal. It appears that Simplot Investment Company, hereinafter called "Simplot," was doing business under the name of Cal-Ida Lumber Company, and that references in the record to "Cal-Ida" should be taken to refer to Simplot doing business under that name.

The record shows that appellant Simplot was engaged in the lumber business and operated a mill at Downieville and a yard at Auburn, both in California. In connection with this operation logs had to be hauled from the woods to the mill at Downieville, and lumber had to be hauled from the mill to the yard at Auburn. Some of this hauling was done by independent contractors who furnished their own equipment and operators. Defendant Bennett was such a con-

tractor and he owned the logging truck involved in this accident. This truck was originally a lumber truck consisting of a tractor and trailer with lumber rolls attached, but some months prior to the accident it had been converted into a logging truck. This involved the removal of the lumber rolls from the tractor and the installation of a so-called bunk as a resting place for the logs. A logging dolly, also having a bunk, was substituted for the trailer. The two bunks were each about 8 feet in width and had chock blocks or cheese blocks at each end to keep the logs from rolling off. These blocks were approximately 14 or 15 inches wide at the base and were about 12 inches high. They were curved on the inner side so as to fit the general contour of the logs, and were so installed that they could be moved inward or outward along the bunks. Once placed in a given position, their further outward movement could be stopped by a chain and hook device, and presumably the logs kept them from moving inward when loaded.

It appears that on July 28, 1950, the date of the accident, and for some time prior thereto, Bennett was engaged in hauling logs for Simplot, using the truck involved in the accident. Appellant Raddatz actually drove the truck during these log-hauling operations. The record shows, and respondents do not deny, that Bennett was doing the hauling as an independent contractor and that Raddatz was his employee.

About three weeks before the accident Raddatz made arrangements with Harold Hallman, who was the superintendent in charge of Simplot's operations at Downieville, to haul lumber for Simplot, using the Bennett logging truck. Simplot hauled lumber from Downieville to Auburn with its own trucks, which were regular lumber trucks, but it had been been operating the mill on two shifts and was behind in its hauling schedule. At least four other truckers were using their logging trucks to haul lumber for Simplot, apparently at night or when it was raining and the trucks could not be used in log hauling. In order to prepare the Bennett truck for lumber hauling it was necessary to provide some sort of bed or platform upon which the lumber could be placed. Raddatz discussed this with Hallman and it was decided to bridge the space between the two bunks with long timbers or stringers. Accordingly, Simplot cut eight 6 by 8 inch stringers about 29 or 30 feet in length which, when placed on the bunks, extended from about 4 feet in front of

the tractor bunk to a like distance behind the dolly bunk. These stringers did not form a solid bed, but were spaced about 4 inches apart, with the 6-inch side resting on the bunks. The outside stringers were placed up against the chock blocks which, being curved to accommodate logs, did not fit against the straight sides of the stringers. After the stringers were placed on the bunks, six crosspieces, consisting of 4 by 4 inch timbers and known as stickers, were placed at intervals crosswise on top of the stringers, and it was on these stickers that the lumber load was placed. The stickers were not nailed to the stringers. Apparently the other truckers, hauling lumber with logging trucks, used the same arrangement, for another set of the timbers was kept on the mill property. The evidence indicates that Simplot owned the timbers and kept them there for the convenience of the truckers. Raddatz, who claimed that he made four or five trips hauling lumber before the accident, stated that he did not always use the same set of timbers.

At the time of the accident the Bennett truck was being driven by appellant Lenwell. Raddatz testified that he was unable to continue hauling logs by day and lumber by night, so he engaged Lenwell to drive the truck in connection with the lumber hauling. Raddatz had authority from Bennett to do the hiring in this instance, and there is no question regarding Lenwell's status as an employee of Bennett. Lenwell had worked for Raddatz for several months, some four years before. On July 28, 1950, which was the day of the accident, Lenwell was at the mill waiting for Raddatz when the latter came in with the truck that evening. Raddatz had been hauling logs and Lenwell was to haul lumber with the truck that night. It was Lenwell's first trip. The loading of the truck took place around 6 p. m. that evening. The evidence shows that Simplot's lift truck operator picked the stringers up from the ground with the lift truck, took them over to the Bennett truck, and dumped them in a pile onto the tractor and dolly bunks. These timbers were green lumber and weighed about 500 pounds each. Raddatz and Lenwell, assisted by the lift truck operator, put the timbers in place on the bunks. Apparently Raddatz and Lenwell placed the stickers or cross-members on without any help, and after this decking was completed the lift truck operator placed six units of lumber on it, consisting of about 8,000 board feet of green fir lumber. The stickers were placed so that there would be one in front, one behind and one on top

of each bunk. This was done to equalize the load on each bunk, and two units of lumber were placed side by side on each of these two sets of stickers, with a third unit centered on top. The units were placed on the truck one at a time, and after the loading was completed Raddatz and Lenwell put chains around the load to bind it and cinched the chains tight with chain binders. There is no claim that any employee of Simplot helped to bind the load or inspected the load or bindings before the truck left. Raddatz testified that they but Lenwell in his deposition testified that it was not. Two chain was fastened to the tractor bunk. He could not recall whether the rear chain was fastened to the dolly bunk, bnt Lenwell in his deposition testified that it was not. Two state highway patrolmen were at the scene shortly after the accident occurred. One of them testified that the load was not bound to either bunk, but admitted that he had not made a detailed observation. The other testified positively that the load was not bound to the dolly bunk, but that he did not observe how the load was bound in front.

After the load was secured Lenwell took the truck and started on the trip to Auburn. He testified that before the accident he stopped the truck twice and checked the chains which bound the load. The first time, he took up slack in two of the chains, but no adjustment was necessary when he stopped the second time. The accident occurred at about 11:20 p. m., at a turn in the highway approximately midway between Nevada City and Grass Valley. Lenwell was traveling downgrade when he approached the turn which was a sharp right turn for him. The pavement is about 21 feet wide at the turn. There is evidence that he was traveling at a speed of about 45 to 50 miles per hour and was over the center line and on the wrong side of the highway, when he went around the turn. Lenwell himself testified that he was traveling at a speed of 35 miles per hour as he approached the turn and that he reduced his speed. He also testified that he released the brakes when the cab was halfway around the turn and did not in rounding the turn go over the center line. It appears that just as he was straightening the truck out, after making the turn, the rear units of lumber were thrown from the truck toward the left onto the highway or perhaps onto the Risley car which was coming from the opposite direction and was then about even with the tractor part of the truck. The evidence shows that the binder on the rear chain broke when the rear portion of

the load was lost, and that a flange or hook, which was part of the chain device to keep one of the chock blocks from sliding outward on the dolly bunk, also broke. There is no claim that any occupant of the Risley car was at fault, and contributory negligence is not an issue in these cases. The truck came to a stop about 275 feet from the point where the lumber went off the truck. The accident resulted in the injuries which are the basis for these suits.

Other facts shown by the record will be detailed in the course of this opinion.

As hereinbefore stated, defendant Simplot Investment Company and defendants Lenwell and Raddatz have appealed from the judgment. These appellants have filed separate briefs. The major contentions made by appellant Simplot are as follows:

"I. The evidence is insufficient to support the verdicts against appellant Simplot Investment Company."

"II. The court committed prejudicial error in allowing traffic officers Kitts and Steuber to give opinion evidence that use of the trucking equipment here involved constituted improper practice."

"III. The court committed prejudicial error in refusing, modifying and giving various instructions."

"IV. The damages awarded respondents Burdette G. Risley and Violet R. Risley are excessive as a matter of law and were influenced by passion and prejudice on the part of the jury."

The major contentions made by appellants Lenwell and Raddatz are as follows: I. Misconduct of plaintiff's counsel during the trial; II. Excessive damages; III. Errors of law in the admission of evidence and in the giving and refusing of instructions.

### Appeal of Simplot Investment Company

We shall first discuss the contentions of appellant Simplot in the order of their statement.

The jury was instructed that Bennett was doing the hauling as an independent contractor and that Raddatz and Lenwell were his employees. Relying on this relationship between it and Bennett, Simplot contends that it cannot be held liable for the accident and resulting injuries, because (a) there is no evidence showing any negligence on its part in the loading of the truck or that anything done by it in connection with the loading contributed proximately to the

accident, (b) the evidence is insufficient to bring the case within any exception to the independent contractor rule of nonliability, and (c) there is no evidence showing any proximate causal connection between the accident and anything done or omitted by it (Simplot) or between the accident and the manner in which the equipment involved was set up for hauling lumber. In essence, Simplot's argument is that the evidence shows that the accident was caused solely by the manner in which Lenwell, the driver, propelled the loaded truck around the turn in the highway, with the rear portion of the load not bound to the dolly bunk, and driving at an excessive rate of speed on the wrong side of the highway. Simplot points to Burdette Risley's testimony that the rear load came off when Lenwell attempted to swerve back onto his own side of the highway (presumably to avoid a head-on collision with the Risley car), and argues that the same thing would have happened if an ordinary lumber truck had been used. Simplot admits the part played by its lift truck operator in placing the stringers on the bunks and in placing the lumber on the decking, but denies that there is any evidence that this was done improperly or that it proximately contributed in any way to the accident. Simplot also denies that it is chargeable with the failure of Bennett's employees to bind the load properly. Finally, with reference to the rule that one cannot escape liability by employing an independent contractor to do work which is inherently dangerous unless proper precautions are taken, Simplot argues that there is no showing that the hauling with the equipment here involved was inherently dangerous. The test, says Simplot, is whether or not the work is of such a nature that it probably will, and not merely may, cause injury if proper precautions are not taken. Simplot points to testimony that other truckers were using similar equipment to haul lumber, without accident or mishap, and concludes that there was no showing that the use of such equipment for such purpose was inherently dangerous.

Respondents contend, in reply, that there is ample evidence to support the verdicts against Simplot under any of the following theories: (a) That Simplot was negligent in hiring an incompetent contractor; (b) that Simplot was negligent in failing to put a stop to unnecessary dangerous practices; (c) that Simplot was negligent in contracting for work which was unlawful; (d) that Simplot was negligent in supplying defective and inadequate chattels; (e) that Simplot negli-

gently participated in the unlawful equipping and loading of Bennett's logging truck; (f) that Simplot is vicariously liable in contracting for work which was inherently dangerous; and (g) that there is ample evidence that Simplot's negligence was a proximate cause of the accident.

The general rule as to the liability of the employer of an independent contractor has been aptly stated in Prosser on Torts at page 483, as follows:

"For the torts of an independent contractor, as distinguished from a servant, it has long been said to be the general rule that there is no vicarious liability upon the employer. This doctrine developed, both in English and in American law, at a time when such liability for the torts of a servant was well established, and it seems to have been, in its inception, something of a retreat from the rigors of that rule. Various reasons have been advanced for it, but the one most commonly accepted is that, since the employer has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and administering and distributing it."

Dean Prosser then goes on to state that the American courts "have whittled away at the rule of non-liability with exceptions, to the point where it is not easy to say that any 'general rule' remains." Also:

"In the first place, quite apart from any question of vicarious responsibility, the employer may be liable for any negligence of his own in connection with the work to be done. Where there is a foreseeable risk of harm to others unless precautions are taken, it is his duty to exercise reasonable care to select a competent contractor, and to provide, in the contract or otherwise, for such precautions. So far as he gives directions for the work, furnishes equipment for it, or retains control over any part of it, he is required to exercise reasonable care for the protection of others; and he must likewise interfere to put a stop to any unnecessarily dangerous practices, and make a reasonable inspection of the work after it is completed, to be sure that it is safe. In all of these cases, he is liable for his personal negligence, rather than that of the contractor."

In Restatement of Torts, page 1108, the term "competent contractor" is defined as follows:

"The words 'competent contractor' denote a contractor

who possesses the knowledge, skill, experience and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others and who also possesses the personal characteristics which are equally necessary thereto.''

It is conceded that the relationship of appellant Bennett to appellant Simplot was that of independent contractor. In order to support the verdicts against appellant Simplot it must appear from the evidence and the inferences that may reasonably be drawn therefrom that Simplot was negligent in employing Bennett to haul the lumber, knowing that Bennett would use equipment that was dangerous, and also that the negligence of Simplot in so doing was a proximate cause of the injuries to respondents.

There is ample evidence that both Simplot's general manager, Duff, and its superintendent in charge at Downieville, Hallman, knew what type of equipment Bennett would use and how it would be set up for hauling lumber. In fact, Simplot furnished the stringers and stickers used in the loading. Duff, himself, testified that hauling lumber on a logging truck was an unusual operation, and that this was the only time that Simplot had utilized such equipment and it was just a matter of maybe two or three weeks. It appears from Duff's testimony that Simplot normally hauled its lumber on its own trucks (which were regular lumber trucks), but that at the time here involved it was some 54 loads behind in its hauling schedule.

Two state highway patrolmen, who were called to the scene just after the accident, were permitted to state their opinions regarding the equipment and method of loading. Officer Steuber, when asked whether it was proper practice to put a load of lumber upon a tractor and dolly ''in that manner at that time and place,'' replied that he had never seen one loaded like that and that he did not consider it proper practice. When asked whether he considered it proper practice to load a logging dolly with lumber ''when you have put upon the bunks stringers such as you have described existed here, eight in number, 6 inches in width, which were not attached to or bound to the bunks,'' Steuber replied, ''No.'' And when asked: ''Do you consider it proper practice—and these questions are directed to July 28, 1950, and naturally have reference to the particular equipment that you have testified that you examined in question—do you consider it

proper practice to use a logging dolly and a tractor equipped and set up in the manner this dolly and tractor were at that time and place, for the purpose of hauling lumber?" he again answered in the negative. Steuber had testified earlier that the load and stringers had not been bound to the tractor and dolly bunks, but later admitted that the front part of the load could have been bound to the tractor bunk and that he just did not observe it. He also testified that the load had been bound to the stringers with chains, but that he did not know how many chains, and that the binder on the rear chain was broken.

Officer Kitts, having testified that he did not make any observation to determine whether the load and stringers were bound to the tractor bunk and that there was no binding of the load or the stringers to the dolly bunk, was asked: "With reference to the manner in which you have testified that the stringers were placed upon the bunks upon that tractor and upon that dolly at that time and place, was that, in your opinion, good practice to so construct a lumber truck to be used upon the public highway such as this?" and replied, "Absolutely not." He was also asked the following question: "Now, then, with reference to the manner in which the rear end of that load—I am speaking now of the rear end of the load where you determined there was no chain attaching the stringers or the load to the bunk—was the manner in which the rear end of that load was placed upon the bunk and where the load was attached only to the stringers and not to the bunk, in your opinion, good practice at that time and place, that type of equipment?" and replied, "No." Finally, after testifying that he had observed the equipment used and the method of loading, he was asked whether "that equipment and that loading at that time and place was, in your opinion, a proper method and manner of loading and equipping a piece of equipment," to which he replied "No."

There was testimony that the load was bound to the stringers by chains, but that neither the stringers nor the load were bound to the tractor or dolly. The stickers and stringers were held in place by the weight of the lumber and the load was in effect a "floating load." The stringers did not form a solid deck and it may well be doubted whether the concave chock blocks furnished adequate lateral support for the lumber. The chock blocks on appellant Bennett's truck are typical of logging trucks and are not used on ordinary lumber trucks; their function is to keep logs from slipping sideways. While

logs, which are round, would fit into the concave chock blocks, the 6 by 8 stringers would only go to the bottom of the inner base of the chock blocks. Appellant Raddatz testified: "Q. Then, prior to the time you placed any weight upon the top of the stringers or the stickers, if you attempted to bring together the cheese blocks, they would simply push the stringers closer together, would not they, or they would go up the side of the concave side of the cheese blocks? A. If you applied enough power to them, yes." It is the contention of respondents that "The photographs of Bennett's truck demonstrate that the centrifugal force in making the turn to the right at the scene of the accident, combined with the arrangement of the stringers four inches apart and up against the smooth steel concave side of the chock blocks in such a manner that the load on the dolly and the load on the tractor were tied together, caused the stringers to slide together and go up the left side of the left chock block on the dolly."

The implied findings of the jury were that appellant Simplot was negligent in employing appellant Bennett to haul the lumber when it not only knew the type of equipment Bennett had but supplied part of that equipment, that the equipment used was dangerous, and that the negligence of appellant Simplot in so employing appellant Bennett to use said equipment was a proximate cause of the accident. If it can be held that the evidence sustains these implied findings we are satisfied that the instant case comes within the exceptions to the general rule as to the liability of the employer of an independent contractor, as hereinbefore set forth.

The well-settled rule as to the power of an appellate tribunal in passing upon the sufficiency of the evidence to support a judgment is aptly stated in *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, at page 429 [45 P.2d 183], as follows:

"In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the review-

ing court is without power to substitute its deductions for those of the trial court.''

In discussing the rule it is said in *Estate of Bristol,* 23 Cal.2d 221, at page 223 [143 P.2d 689] :

''. . . The critical word in the definition is '*substantial*'; it is a door which can lead as readily to abuse as to practical or enlightened justice. It is common knowledge among judges and lawyers that many cases are determined to the entire satisfaction of trial judges or juries, on their factual issues, by evidence which is overwhelming in its persuasiveness but which may appear relatively unsubstantial—if it can be reflected at all—in a phonographic record. Appellate courts, therefore, if there be any reasonable doubt as to the sufficiency of the evidence to sustain a finding, should resolve that doubt in favor of the finding; and in searching the record and exploring the inferences which may arise from what is found there, to discover whether such doubt or conflict exists, the court should be realistic and practical.''

Bearing in mind the rule just stated, and after a careful study of the entire record, including the numerous photographs introduced as exhibits, we have concluded that there is substantial evidence in the record to support the implied findings of the jury that appellant Simplot was negligent in employing appellant Bennett to haul the lumber when it not only knew the type of equipment that Bennett had but supplied part of that equipment, that the equipment used was dangerous, and that the negligence of appellant Simplot in so employing Bennett to use said equipment was a proximate cause of the accident.

We believe that it could reasonably be inferred from the evidence that Bennett was not a competent contractor within the meaning of the term as defined in the quotation from Restatement on Torts as hereinbefore set forth, because he did not have adequate or suitable equipment for the job; and that appellant Simplot was aware of the inadequacy of the equipment for it furnished the timbers and helped Bennett's employees set up the rig for hauling. We believe also that the evidence supports the inference that the equipment was inadequate because it was designed for hauling logs and was converted into a lumber carrier by the addition of a flimsy and makeshift platform which did not form a solid deck or receive adequate lateral support from the concave blocks against which the outside stringers were placed. We believe further that the jury was justified in conclud-

ing, as it undoubtedly did conclude, that the hauling of lumber on such equipment over a mountain highway was a dangerous operation; that appellant Simplot knew that it was unsafe; and that appellant Simplot was negligent in employing Bennett to haul the lumber with such equipment under the circumstances present in the instant case.

Appellant Simplot argues that none of the factors relied upon by respondents show that the equipment was a dangerous instrumentality apart from the negligent manner in which it was handled, and that there was no showing in the evidence that danger was to be expected from the use of the equipment as distinguished from the manner of its use. However, appellant Simplot erroneously assumes that the evidence is not susceptible of any other construction than that appellant Lenwell, the driver of the truck, was operating it at an excessive rate and in a negligent manner. There is, of course, evidence from which it can be inferred that Lenwell did operate the truck in a highly negligent manner, and the jury would have been justified in finding that his negligence was the sole proximate cause of the accident. But, unfortunately for appellant Simplot, the jury did not so find, and there is evidence in the record from which it can be inferred that Lenwell was not operating the truck in a negligent manner. For it appears from Lenwell's testimony that he drove down the hill toward the point of the accident at a speed of about 35 miles per hour. During at least the last 500 feet before the final turn he applied his brakes. At a point about halfway around the last turn his speed was about 30 miles per hour. He had straightened out and was about 100 feet past the turn when the lumber came off the logging dolly. Lenwell's speed at that time was about 30 miles per hour. Lenwell further testified: ''A. I had drove around the corner there with regular truck and trailer loads of lumber at that speed several times. Q. What kind of loads? A. Regular truck and trailer with lumber rolls with lumber on it. Q. You had gone around that turn on many other occasions where you had a regular lumber truck and lumber trailer? A. Yes. Q. At 30 to 35 miles an hour, safely? A. Yes.'' Lenwell also testified that he came to a gradual stop after spilling the lumber because the front part of the load on the tractor was about to come off.

Appellant Simplot contends also that there is no evidence showing any proximate causal connection between the accident and the manner in which the equipment involved

was set up for hauling lumber. But we believe it is fairly inferable from the evidence hereinbefore set out that the hauling of a heavy load of lumber on such equipment was not only an unusual and improper way of hauling lumber but that it was dangerous and unsafe; that the instability of such load was likely to put too much strain upon the chains binding the load and cause said chains to break and the lumber to go off the truck. We believe that the jury could reasonably conclude that Lenwell's manner of driving would not have resulted in the accident if it had not been for the flimsy makeshift platform for hauling lumber on the logging rig and that appellant Simplot knew that such equipment was the only equipment that Bennett had to use in said hauling and supplied the stringers and stickers upon which the lumber was to be placed. Under such circumstances whether or not there was any proximate causal connection between the accident and the manner in which the equipment involved was set up was a question for the jury and we cannot hold that the implied finding of the jury against appellant Simplot upon this issue is unsupported.

In its closing brief appellant Simplot contends that the incompetent contractor exception to the independent contractor rule is outside of the issues as presented by the pleadings and may not be relied upon to support the verdicts against Simplot. The charging allegations against Simplot are set out in paragraph VII of Burdette Risley's second amended complaint, as follows:

"That on or about the 28th day of July, 1950, defendant, Cal-Ida Lumber Company, a corporation [Simplot], and each and all of the remaining defendants here, by and through their agents, servants, representatives and employees, negligently and carelessly loaded said 1947 Peterbilt Log Tractor, bearing California License No. BE HH 7261; that on or about the 28th day of July, 1950, defendant, Earl Whitney Lenwell, drove, operated, maintained and propelled said 1947 Peterbilt Log Tractor, bearing California License No. BE HH 7261, at which time and place said 1947 Peterbilt Log Tractor was carrying the lumber which was carelessly and negligently loaded by defendant, Cal-Ida Lumber Company, a corporation, and each and all of the remaining defendants herein, by and through their agents, servants, representatives and employees, along and upon Highway 20 and 49, a public highway and thoroughfare in the County of Nevada, State of California, at or about a point on said Highway 20 and

49 approximately 1.5 miles south of Nevada City, County of Nevada, State of California, in such a reckless, careless and negligent manner that as a direct and proximate result thereof, that certain load of lumber which was then and there being carried on said 1947 Peterbilt Log Tractor was caused to and did, with great force and violence, fall from said 1947 Peterbilt Log Tractor and strike that certain 1947 Chevrolet Club Coupe which was then and there being driven by this plaintiff.''

An identical paragraph is set out in Violet Risley's second amended complaint, as paragraph VI thereof, except that this paragraph alleges that the plaintiff was *riding* in the club coupé. The trial court, over Simplot's objection, permitted the above two paragraphs to be amended by insertion of the following after the words ''negligently and carelessly loaded said 1947 Peterbilt Log Tractor, bearing California License No. BE HH 7261;'':

''that on or about the 28th day of July, 1950, defendant, Cal-Ida Lumber Company, a corporation, and each and all of the remaining defendants herein, by and through their agents, servants, representatives and employees, negligently, carelessly and knowingly permitted said loaded 1947 Peterbilt Log Tractor, bearing California License No. BE HH 7261 to be driven and operated along and upon Highway 20 and 49, a public highway and thoroughfare in the County of Nevada, State of California, at or about a point on said Highway 20 and 49 approximately 1.5 miles south of Nevada City, County of Nevada, State of California, in an unsafe and dangerous condition and improperly loaded and equipped.''

This was done at the commencement of the trial, notice of the motion having been given some four days before.

It is apparent from the record that throughout the trial respondents were proceeding on the theory that appellant Simplot in employing appellant Bennett to haul the lumber under the circumstances hereinbefore set forth was employing an incompetent contractor. In fact, in the argument of respondents' counsel to the jury he states:

''So far as Simplot Investment Company, doing business as Cal-Ida, was concerned, the theory upon which liability is predicated in that case is, as you have undoubtedly suspected, it is not predicated upon an employer-employee relationship, it is predicated upon the law of the State of California to this effect: That anyone who hires an individual contractor, an independent contractor knowingly, and knows

that that independent contractor has defective equipment which is negligently constructed, and which will be negligently operated, and if injury is caused as a proximate result of that negligent, knowing hiring and that equipment, then that independent contractor can not escape liability solely by virtue of the fact that it is an independent contractor, rather than an employer.''

Counsel for appellant Simplot met this issue squarely in his argument to the jury, discussing it on the merits and in no way suggesting that it was outside of the issues in the cases. Furthermore, the jury was given two instructions along the line of the argument of respondents' counsel hereinbefore set forth and while appellant Simplot contends in its brief that such instructions were erroneous (which contention will be discussed hereinafter), it does not criticize said instructions upon the ground that they are outside the issues.

While it is true that as a general rule an issue not presented by the pleadings cannot be considered on appeal (*Munfrey* v. *Cleary,* 75 Cal.App.2d 779, 784 [171 P.2d 750]), it is also true that where a case has been tried upon a definite theory and particular issues it may not be reasonably contended for the first time on appeal that some of the issues were not properly pleaded. (*Guardianship of Romine,* 91 Cal.App. 2d 389, 393 [205 P.2d 733].)

So even if there were merit in appellant Simplot's contention that the incompetent contractor exception to the independent contractor rule is outside of the issues as presented by the pleading, it is well to bear in mind section 4½ of article VI of our state Constitution, which provides that:

''No judgment shall be set aside, or new trial granted, in any case, . . . for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.''

Appellant Simplot next contends that the court erred in admitting the testimony of Highway Patrol Officers Steuber and Kitts (hereinbefore summarized) in which each officer was permitted to testify, over appellants' objections, that in his opinion it was not proper practice to use a tractor and logging dolly, equipped as shown in the instant case, for the purpose of hauling lumber. Appellant Simplot complains that the admission of this evidence was prejudicial error in that (1) neither of the officers was qualified as an expert

in the field of hauling lumber, (2) that the subject matter was not properly a matter for expert testimony, since any ordinary layman was competent to judge whether the truck was loaded properly, and (3) that the testimony invaded the province of the jury, involving the very questions of fact which the jury was called upon to decide, i.e., whether the equipment was safe for use in hauling lumber and whether the lumber was loaded in a negligent manner. The record shows that both officers, during their employment by the highway patrol, had observed and inspected literally hundreds of logging and lumber trucks, and it is a fair inference that they were thoroughly familiar with the construction of such equipment and the manner in which the equipment was normally loaded and operated. It appears from the record, and is a matter of common knowledge, that highway patrol officers are required to attend a Highway Patrol Training Center and are instructed as to the provisions of the Motor Vehicle Act and that their duties in a lumber area include observing and inspection of logging and lumber trucks to determine whether the equipment is safe and is in accordance with the provisions of the Vehicle Code, section 700 of which provides:

"No vehicle shall be driven or moved on any highway unless such vehicle is so constructed or loaded as to prevent any of its contents or load other than clear water from dropping, sifting, leaking or otherwise escaping therefrom."

 It seems to be well established that traffic officers whose duties include investigations of automobile accidents are qualified experts and may properly testify concerning their opinions as to the various factors involved in such accidents, based upon their own observations. In what may be considered the leading case upon the subject, the recent case of *Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716, 721 [232 P.2d 572] (hearing denied), a witness, Harry W. Edwards, Jr., testified that he had been a traffic officer for seven years, during which time he had investigated, officially, about one accident a day; that it was his duty to investigate accidents and to report to his superiors his conclusions and opinions as to what caused the accidents and how they happened. He observed the points of rest of the two cars and the nature of the damage to them, the extent, course, location, and nature of the debris, and the scrape marks, their course and nature. He was then asked his opinion, based solely on what he had observed at the scene "as to the approximate

point of impact on the highway between the vehicles.'' Objection was made that the question called for expert testimony and was incompetent, irrelevant and immaterial. The objection was overruled and the witness was permitted to answer the question. Upon appeal it was urged that it was error to admit such testimony, but the court held that the testimony had been properly admitted. Presiding Justice Peters in a well-reasoned opinion reviewed numerous earlier cases, and stated, at pages 723-727:

''Moreover, in our opinion, it was within the discretion of the trial court to admit this opinion evidence. Appellants assume that Edwards was permitted to give his opinion solely as a nonexpert, and contend that the exception to the rule that a nonexpert cannot give his opinion is limited to cases of necessity where the opinion is not only based on probabilities, but where the subject matter is so complex or subtle that, from a practical necessity, the ultimate fact can only be conveyed to a jury by means of an opinion. Appellants then urge that these conditions did not here exist. They seem to argue that the only time an expert can give an opinion is when he bases his opinion upon a hypothetical question. The expert is not permitted, so they seem to argue, to base his opinion upon facts which he himself observed.

''Such arguments are based upon a misconception of the nature of expert testimony. In a proper case, an expert can give his opinion whether or not he bases such opinion on facts presented in a hypothetical question, or upon facts he observed for himself. The key question is whether or not the subject under discussion is one permitting expert testimony, not the source of the facts upon which the opinion is predicated.

. . . . . . . . . . . . .

''Thus, expert testimony is admissible or not dependent upon whether the subject matter is within common experience or whether it is a special field where the opinion of one of skill and experience will be of greater validity than that of the ordinary juryman. It is quite obvious that the conclusion, based upon the facts of the particular case, as to just where a collision between two vehicles occurred, may be so obvious that any reasonable person, trained or not, can draw that inference from the facts. It is equally clear that cases may occur where the opinions of trained experts in the field on this subject will be of great assistance to the members of the jury in arriving at their conclusions. In such cases a traffic

officer who has spent years investigating accidents in which he has been required to render official reports not only as to the facts of the accidents but also as to his opinion as to their causes, including his opinion, where necessary, as to the point of impact, is an expert. Necessarily, in this field, much must be left to the common sense and discretion of the trial court. (*Nolan* v. *Nolan*, 155 Cal. 476 [101 P. 520, 132 Am. St.Rep. 99, 17 Ann.Cas. 1056]; *Lacy Mfg. Co.* v. *Gold Crown Mining Co.*, 52 Cal.App.2d 568 [126 P.2d 644].)''

Appellant Simplot argues:

''There would seem no doubt, therefore, that although counsel for respondents endeavored to predicate his various questions to the witnesses Steuber and Kitts on the matter of whether the loading and use of the equipment here involved was or was not proper or improper practice, the real purpose of respondents' counsel was to make it appear that in their opinion this equipment was unsafe and dangerous to use upon the public highways, and to also make it appear that the use of such equipment was in violation of the California Vehicle Code, when in fact it was not. This, clearly, was a roundabout way of having the witnesses testify to the very issue the jury was called upon to decide, namely, whether the equipment was unsafe and improperly loaded, an issue which was of vital importance to the rights of Simplot, in view of the independent contractor relationship of Bennett.''

In reply respondents argue:

''. . . But the officers did *not* testify that the conduct of Simplot's employees and of Lenwell and Raddatz in so constructing, equipping and loading the truck constituted negligence or was dangerous and unsafe, and no amount of ingenious argument can change the actual facts as they appear in the record and as quoted above. The officers testified simply that such practice was not proper, leaving it to the jury to decide from that testimony, together with all the other evidence in the record, whether or not such practice was a negligent one.''

We do not believe that the court erred in permitting the traffic officers to answer the questions objected to by appellants. The officers in the course of their specialized work had observed and inspected hundreds of trucks on the highway, and by reason of their training and experience were better qualified than a layman to express an opinion as to whether or not the logging truck involved in the instant case was properly equipped and loaded. Whether or not

expert testimony is admissible must necessarily be left to the discretion of the trial judge. ▆▆▆ The determination of the competency of a witness to testify as an expert is in itself in the nature of a trial of a question of fact addressed to the trial judge alone, and as in other decisions on questions of fact by a trial judge, his ruling thereon will not be overturned on appeal unless there is an actual want of evidence to support it or a clear abuse of discretion in ruling upon the evidence offered on the subject. (*Mirich* v. *Balsinger*, 53 Cal.App.2d 103, 114 [127 P.2d 639].)

▆▆▆ Furthermore, we believe that in view of the photographs and the other evidence in the case, the ruling of the court permitting the Highway Patrol officers to answer the questions complained of by appellants, even if erroneous, was not reversible error.

▆▆▆ Appellant Simplot says the error in admitting the opinion evidence above referred to was accentuated by the following instruction wherein the court told the jury that it should consider such evidence:

"The rules of evidence ordinarily do not permit the opinion of a witness to be received in evidence. An exception to this rule exists in the case of expert witnesses. A person who, by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any such matter in which he is versed and which is material to the case. You should consider such expert opinion and should weigh the reasons, if any, given for it."

It appears from the clerk's transcript that said instruction was given at the request of defendants. Appellant Simplot does not argue that it is not a correct statement of the law or that it is not the instruction usually given in personal injury cases, especially where, as in the instant case, there has been considerable medical testimony. In the instant case the said instruction was certainly applicable to the testimony of the physicians.

Appellant Simplot complains further that the court committed prejudicial error in refusing, modifying and giving various instructions. The following instructions, offered by Simplot, were refused:

(1) "One who engages an independent contractor is not subject to liability for bodily harm caused to another by a negligent act or omission of the independent contractor or his servants."

(2) "One engaging an independent contractor for the

purpose of hauling materials on the public highways has no duty to anticipate that such independent contractor or his employees will not use proper equipment or will improperly load the same or will travel over the highways at an excessive speed.''

(3) ''The mere fact that defendants Simplot Investment Company or Cal-Ida Lumber Company furnished defendants Raddatz and Lenwell the timbers used by them in making the deck on the truck of defendant Bennett does not impose liability in this case upon defendants Simplot Investment Company and Cal-Ida Lumber Company.''

Regarding these refused instructions, Simplot says, as to the first, that the failure to give it deprived Simplot of the right to have the jury instructed on Simplot's theory of the case, i.e., the principle upon which it relied to escape liability; as to the second, that without it the jury would have no way of knowing where Simplot's duty began or ended with respect to the independent contractor relationship; and as to the last, that it was necessary, in view of other instructions (not identified) which were given.

 We are unable to agree with appellant Simplot's contention that the refusal of these instructions constituted reversible error because the jury was given an instruction that Bennett was an independent contractor as to Simplot, that Simplot would not be liable if the jury found that the injuries resulted solely from the manner in which Lenwell operated the truck, and that a verdict should not be returned against Simplot unless the jury found that Simplot was negligent and that such negligence was a proximate cause of the accident.

It is clear from the record, including all of the instructions and the arguments of counsel, that Simplot's contention throughout was that Bennett was an independent contractor and that it was not liable for the negligence of Lenwell in the operation of the logging truck. Respondents' contention that their case against Simplot was predicated upon the proposition ''that anyone who hires an individual contractor knowingly, and knows that that independent contractor has defective equipment which is negligently constructed, and which will be negligently operated, and if injury is caused as a proximate result of that negligent, knowing hiring and that equipment, then that independent contractor can not escape liability solely by virtue of the fact that it is an independent

contractor, rather than an employer,'' was clearly and forcibly presented to the jury.

Appellant Simplot next contends that the court committed prejudicial error in modifying one of the instructions offered by it.

The following instruction, proposed by Simplot, was modified by the addition of the clause italicized, and was given as so modified:

''. . . Defendant William E. Bennett, at the time and place of the accident here involved was an independent contractor as to the defendant Simplot Investment Company, doing business as Cal-Ida Lumber Company, and if you believe from the evidence that the injuries complained of by plaintiffs resulted solely from the manner in which defendant Earl Whitney Lenwell drove and operated the truck of said defendant William E. Bennett, at the time and place of the accident complained of, then your verdict must be in favor of the defendant Simplot Investment Company, doing business as Cal-Ida Lumber Company, *unless you find such defendant liable under the other instructions which I am giving to you.*''

The addition of the italicized portion, says Simplot, nullified the effect of the proposed instruction and might well have created confusion and brought about a conflict in the minds of the jurors as to the law applicable to the facts set forth in the proposed instruction.

While it is no doubt true that the portion of the instruction added by the court might ordinarily be confusing to a jury, yet when it is considered with all of the instructions given to the jury we do not believe that appellant Simplot was prejudiced by it in the instant case. For the jury was instructed that appellant Simplot was an independent contractor and was also instructed:

''If one engages another to perform work when he knows, or in the exercise of ordinary care would know, that he will use improper and unsafe equipment which is liable to cause damage to others, then the hirer of such a person is liable for any damage proximately caused by the performance of such work because of the use of any such improper or unsafe equipment. If you find from the evidence that any employee or employees while acting within the course and scope of employment for the defendant Simplot Investment Company, a corporation, doing business under the firm name and style of Cal-Ida Lumber Company, engaged William

Bennett to haul this lumber when he knew or in the exercise of reasonable care would have known that the defendant William Bennett would furnish improper or unsafe equipment to haul the lumber, if you find that he did, and if you further find that the proximate cause of this accident was the use of improper and unsafe equipment, if any, furnished by the defendant William Bennett, then your verdict must be in favor of the plaintiffs.''

As hereinbefore pointed out, it is clear from the evidence, the instructions and the arguments of counsel to the jury (which are in the record) that respondents were seeking to fasten liability upon appellant Simplot upon the theory that it engaged an independent contractor knowing that said contractor had unsafe and defective equipment which he would use in hauling the lumber, and that the negligence of appellant Simplot in engaging said independent contractor under such circumstances was a proximate cause of the injuries to respondents. We believe that in view of the instructions previously given the court intended to tell the jury by this instruction that appellant Simplot could not be held liable if the injuries to respondents resulted solely from the manner in which Lenwell drove the logging truck, but that appellant Simplot could be held liable if the jury found it liable under the other instructions given by the court. It must be borne in mind that the instant case was one in which several actions were consolidated for trial and that it was one requiring a great many instructions on the various phases of the law involved, and we do not believe that the addition by the court of the italicized portion added to the instruction offered by appellant Simplot resulted in any prejudice to said appellant or that it constituted reversible error.

Simplot complains that the following instructions, which state the provisions of sections 731(a) and 701(e) of the Vehicle Code, were erroneously given at the instance of respondents:

(1) ''It is unlawful for the owner, or any other person, employing or otherwise directing the driver of any vehicle to require the operation of such vehicle upon a highway in any manner contrary to law.''

(2) ''No person shall operate a train of vehicles when any trailer, semi-trailer or other vehicle being towed whips or swerves from side to side dangerously or unreasonably or fails to follow substantially in the path of the towing vehicle.''

Simplot points out that the court also instructed the jury that if the latter believed from the evidence that the truck and trailer were inadequate or unsafe on which to haul lumber, and that Simplot knew this or in the exercise of ordinary care would have known it, then Simplot was guilty of negligence in permitting its lumber to be hauled on the truck and trailer; and further instructed the jury that if one engages another to perform work when he knows, or in the exercise of ordinary care would know, that he will use improper and unsafe equipment which is liable to cause damage to others, then the hirer of such a person is liable for any damage proximately caused by the performance of such work because of the use of such improper or unsafe equipment; and, finally, that the jury was also instructed that if it found that Simplot engaged Bennett to haul lumber when Simplot knew or in the exercise of reasonable care would have known that Bennett would furnish improper or unsafe equipment to haul the lumber, and that if the jury further found that Bennett did furnish improper or unsafe equipment and its use was the proximate cause of the accident, then the jury's verdict must be in favor of plaintiffs (respondents here), and not only against Bennett, but also against Simplot.

Appellant Simplot argues that there is no evidence that it required Lenwell to drive the truck as he did, i.e., at excessive speed, etc., or that the dolly whipped or swerved from side to side or did not follow substantially in the path of the tractor, and Simplot concludes that not only were the two instructions—the ones covering the Vehicle Code provisions —inapplicable, but that when given with the other instructions they were misleading and prejudicial in that they suggested to the jury that the dolly did in fact swerve from side to side and that the equipment was therefore being operated in a manner contrary to law, and the jury, says Simplot, acting on this suggestion may have found that Simplot was negligent merely because it permitted its lumber to be hauled on the truck.

We are unable to agree with appellant Simplot's contention that there was error in the reading of these sections of the Vehicle Code to the jury or that said appellant was prejudiced thereby. Said instructions must be read and considered together with all of the other instructions given by the court, and it would appear that said instructions were certainly pertinent to the liability of defendants Lenwell, Raddatz and Bennett.

Appellant Simplot next complains of the following instruction, also given at the request of respondents:

"If a person hires another to haul lumber when he knows or in the exercise of reasonable care would have known that he would have the lumber negligently, improperly and unsafely loaded, then the hirer of such person would be liable for any damages proximately caused by any such negligent, improper, and unsafe loading, if any, of any such lumber."

Appellant Simplot argues that the word "hires" implies a master and servant relationship; that the meaning of the word "loaded" is not clear; that even if the instruction refers to an independent contractor relationship it is erroneous in that it assumes that the party engaging the contractor is under a duty to ascertain whether the latter will perform the work properly, whereas the rule is that the engaging party may assume that the work will be done properly; and that there is no evidence showing either that Simplot knew that the truck was negligently, improperly or unsafely loaded or that there were facts from which Simplot should have known that the truck would not be properly loaded. The only particular in which the loading could be deemed improper, says Simplot, would be in the failure of Bennett's employees to bind the rear portion of the load to the dolly bunk, and there is no evidence that Simplot had anything to do with this. However, as pointed out by respondents, the jury was instructed that Bennett was an independent contractor as to Simplot and that a verdict could not be returned against Simplot unless the jury found that Simplot was negligent and such negligence was a proximate cause of the accident.

Appellant Simplot next complains of the following five instructions given at the request of respondents:

(a) "If you find from the evidence that the truck and trailer were improperly and unsafely loaded and that any employee or employees of the defendant Simplot Investment Company, a corporation, doing business as Cal-Ida Lumber Company, helped the defendants Earl Lenwell and Warren Raddatz load the truck and trailer in an improper and unsafe manner, if any, and if you further find from the evidence that such improper and unsafe loading, if any, were the proximate cause of the accident, then your verdict must be in favor of the plaintiffs, Burdette G. Risley, Hilda Risley, Violet Risley, and Jay Humbird, and against the defendant

Simplot Investment Company, doing business as Cal-Ida Lumber Company.''

(b) ''If you find from the evidence that any employee or employees of the defendant Simplot Investment Company, doing business as Cal-Ida Lumber Company, helped the defendant Earl Lenwell, defendants Earl Lenwell and Warren Raddatz to load the truck and trailer, and that such employee or employees, if any, were guilty of any negligence, no matter how slight, which caused the truck to be improperly and unsafely loaded, if you find from the evidence that it were, and that such negligence, if any, were the proximate cause of the accident, then your verdict must be in favor of the plaintiffs Burdette Risley, Hilda Risley, Violet Risley and Jay Humbird, and against the Simplot Investment Company, doing business as Cal-Ida Lumber Company.''

(c) ''If you find from the evidence that the lumber was improperly and unsafely loaded on the truck and trailer, and that any employee or employees of the defendant Simplot Investment Company, a corporation, doing business as Cal-Ida Lumber Company, knew this, and should have known —or should have known it in the exercise of ordinary care, and if they permitted the truck and trailer to haul their lumber which was improperly and unsafely loaded, if it were, then you must find that the defendant Simplot Investment Company, doing business as Cal-Ida Lumber Company, guilty of negligence, and if you further find that such negligence, if any, was the proximate cause of the accident, then your verdicts must be in favor of the plaintiffs Burdette Risley, Hilda Risley, Violet Risley, and Jay Humbird, and against the defendant Simplot Investment Company, doing business as Cal-Ida Lumber Company.''

(d) ''If you believe from the evidence that the truck and trailer involved in this accident were inadequate or unsafe on which to haul lumber, and if you further find from the evidence that any employee or employees of the defendant Simplot Investment Company, a corporation, doing business as Cal-Ida Lumber Company, knew this, or in the exercise of ordinary care would have known it, then they were guilty of negligence in permitting their lumber to be hauled on this truck and trailer and if such negligence, if any, was the proximate cause of the accident, then your verdict must be in favor of the plaintiffs Burdette Risley, Hilda Risley, Violet Risley, and Jay Humbird, and against the defendant Simplot Investment Company, a corporation, doing business as Cal-Ida Lumber Company.''

(e) ''If one engages another to perform work when he knows, or in the exercise of ordinary care would know, that he will use improper and unsafe equipment which is liable to cause damage to others, then the hirer of such a person is liable for any damage proximately caused by the performance of such·work because of the use of any such improper or unsafe equipment. If you find from the evidence that any employee or employees while acting within the course and scope of employment for the defendant Simplot Investment Company, a corporation, doing business under the firm name and style of Cal-Ida Lumber Company, engaged William Bennett to haul this lumber when he knew or in the exercise of reasonable care would have known that the defendant William Bennett would furnish improper or unsafe equipment to haul the lumber, if you find that he did, and if you further find that the proximate cause of this accident was the use of improper and unsafe equipment, if any, furnished by the defendant William Bennett, then your verdict must be in favor of the plaintiffs, Burdette Risley, Hilda Risley, Violet Risley, and Jay Humbird, and against the defendant not only William Bennett, but also against the Simplot Investment Company, doing business under the firm name and style of Cal-Ida Lumber Company.''

Appellant Simplot contends that these instructions are formula instructions which not only are misleading and are not in accord with the law on the independent contractor relationship, but do not contain all of the elements essential to recovery. As to instructions (a) and (b), Simplot objects to the use of the word ''helped'' in both instructions and to the word ''loaded'' in instruction (b), arguing that the instructions do not sufficiently differentiate between the activities of Simplot's employees and the activities of Radditz and Lenwell in loading the truck, and that the jury could easily have been led to believe that by placing the stringers and lumber units on the truck (which Simplot says was properly done) Simplot's employee helped to load the truck in a negligent manner, even though the negligence, if any, lay in the failure of Raddatz and Lenwell to bind the load. Simplot also claims that the reference to negligence ''no matter how slight,'' in instruction (b), erroneously infers that there are different degrees of negligence. Respondents point to the evidence showing Simplot's participation in equipping and loading the truck and argue that these instructions left it to the jury to determine whether such participation constituted

negligence which contributed proximately to the accident. Respondents also point out that Simplot did not request more specific instructions regarding its liability for participation in the loading operation, and also that the jury was fully informed, in other instructions, that there were no degrees of negligence, that Simplot could not be held liable unless it was guilty of negligence which was a proximate cause of the accident, and that Simplot would not be liable for failing to use exceptional care.

Appellant Simplot argues that by instructions (c) and (d) the jury was told in effect that Simplot, having permitted its lumber to be hauled on the equipment in question, would be negligent and liable as a matter of law if it should have known that the equipment was unsafely loaded (instruction (c)) or was unsafe equipment for hauling of lumber (instruction (e)). This, appellant Simplot says, would nullify the independent contractor rule—would leave out of consideration entirely the matter of the contractor's negligence in loading or using the equipment and render the hirer liable merely because he should have known that the contractor might not safely load his equipment or might render the equipment unsafe solely by the manner in which he drives it over the highway. Further, with reference to instruction (d), Simplot questions the use of the words "inadequate or unsafe" without defining them in the instructions. Equipment, says Simplot, might be inadequate to accomplish a particular result, yet it does not follow that such equipment would be unsafe or that the use of such equipment would be a failure to exercise ordinary care, and therefore there is no justification, under the circumstances of these cases, to advise the jury that merely because the equipment might be inadequate the use thereof constituted negligence as a matter of law. Instruction (e), appellant Simplot says, states in effect that if Simplot knew or should have known that Bennett would use equipment which was improper and unsafe and which was *liable* to cause damage to others, Simplot, by engaging Bennett to haul its lumber, would be responsible along with Bennett for any accident resulting from the use of the equipment. Simplot points to the use of the word "liable" as the chief vice of this instruction. The exception to the independent contractor rule, Simplot says, is predicated on the proposition that damage or injury to another is the *probable,* and not merely the *possible,* result of using a particular instrumentality to carry out the work. Here, says

Simplot, the instruction purports to establish liability if the instrumentality is merely "liable" to cause injury and that is not a correct statement of the law. Simplot also complains that instructions (c), (d) and (e) omit all reference to the manner in which the truck was operated and place undue emphasis on situations which have for their only purpose the imposition of liability on Simplot, and Simplot argues that this could not help but unduly impress the jury that the manner in which the truck was operated was of no particular consequence or importance as compared to the manner in which it was equipped and loaded. Formula instructions which do not contain all the elements essential to recovery are prejudicially erroneous, Simplot says, and the error is not overcome by other instructions. (Citing *Pierce* v. *United Gas & Electric Co.*, 161 Cal. 176, 184 [118 P. 700], and other California cases.)

Respondents reply that instruction (c) incorporates the rules that Simplot would be liable if it failed to use reasonable care to put a stop to unnecessarily dangerous practices carried on by its contractor, or if it contracted for work which was unlawful, or if it failed to exercise its control over the loading operations with reasonable care, and that instructions (d) and (e) apply the rule that a hirer must use reasonable care to select a competent contractor and that a contractor is not competent if his equipment is inadequate. They deny that undue emphasis was placed on Simplot's liability, stating that the instructions, considered as a whole, fairly covered all aspects of the cases. In this regard they point out that separate instructions were given which involved various Vehicle Code sections and dealt with Lenwell's operation of the truck, and still another instruction which covered Lenwell's duties as a driver. They deny that the so-called formula instructions omitted any element necessary for plaintiffs' recovery, but argue that if there was such omission it was adequately covered by other instructions (citing *Martens* v. *Redi-Spuds, Inc.*, 113 Cal.App.2d 10 [247 P.2d 605], and other California cases).

If these instructions, so strongly criticized by appellant Simplot, were the only instructions given on the question of liability, there would be considerable merit in said appellant's argument with reference to them. However, as already hereinbefore pointed out, the instant case was one in which several actions were consolidated for trial, requiring a great many instructions on the various phases of the law involved.

These particular instructions must be read and considered along with all of the other instructions given by the court. Furthermore, it is clear from the record, including all of the instructions and the arguments of counsel, that appellant Simplot's contention throughout was that it employed an independent contractor and that it was not liable for negligence in the operation of the logging truck and that respondents' contention was that appellant Simplot had hired a contractor knowing he had defective and dangerous equipment and would use same in hauling said lumber and that therefore appellant Simplot could not escape liability by claiming that Bennett was an independent contractor. We are of the opinion that when the entire record is reviewed and all of the instructions considered together, the giving of these five instructions complained of by appellant Simplot does not constitute reversible error. ■ What our Supreme Court said in *Popejoy* v. *Hannon*, 37 Cal.2d 159, at page 168 [231 P.2d 484], is apropos:

"Prejudicial error does not necessarily result from the giving of an instruction which, subjected to meticulous analysis, might be given a 'possible construction' making it subject to 'criticism.' It is extremely doubtful that the jurors analyzed the instruction with such exactitude as counsel for the Hannons."

Appellant Simplot's final contention is that the damages awarded respondents Burdette G. Risley and Violet R. Risley are excessive as a matter of law and were influenced by passion and prejudice on the part of the jury. This same contention is made by the other appellants.

Burdette Risley was awarded a verdict of $125,000. Apparently this embraced general damages only, for his mother and guardian, Hilda Risley, was awarded a separate verdict for special damages representing medical expenses in the sum of $1,753.53. Violet Risley was awarded a verdict of $75,000. This last verdict apparently included special damages for medical expenses in the sum of $1,310.95, for there was proof at the trial that medical expenses in that amount were incurred on behalf of Violet. Jay Humbird received a verdict for $2,000, apparently general damages.

■ The measure of damages in an action for personal injuries is the amount which will compensate for all the detriment proximately caused by the negligence of the defendant. (Civ. Code, § 3333.) Damages must in all cases be reasonable (Civ. Code, § 3359), but what is a reasonable amount

is a question upon which there may legitimately be a wide difference of opinion. (*Bellman* v. *San Francisco H. S. Dist.*, 11 Cal.2d 576, 586 [81 P.2d 894].) ▮ An allowance of damages is primarily a factual matter, and it is well settled that even though the award may seem large to a reviewing court, it will not interfere unless the allowance is so grossly disproportionate to a sum reasonably warranted by the facts as to shock the sense of justice and raise a presumption that it was the result of passion and prejudice. (*Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, 187 [195 P.2d 427].) ▮ As stated in *Mudrick* v. *Market Street Ry. Co.*, 11 Cal.2d 724, 735 [81 P.2d 950, 118 A.L.R. 533]:

"While the law furnishes no accurate means of measuring damages in personal injury cases, the rule is well established respecting the power and duty of an appellate court in considering that subject and has been stated as follows: 'The amount of damages in such cases is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just. Upon appeal, the decision of the trial court and jury on the subject cannot be set aside unless the verdict is 'so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury.' [Citing cases.]''

▮ And as this court said in *Bazzoli* v. *Nance's Sanitarium, Inc.*, 109 Cal.App.2d 232, at page 243 [240 P.2d 672]:

". . . If he [the trial judge] believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them. [Citing cases.] When the question is raised his denial of a motion for new trial is an indication that he approves the amount of the award. An appellate court has no such powers. ▮ It cannot weigh the evidence and pass on the credibility of the witnesses as a juror does. To hold an award excessive it must be so large as to indicate passion or prejudice on the part of the jurors."

In the instant case all of the appellants filed 'motions for a new trial in the respective actions brought by Burdette and Violet Risley, one of the grounds upon which said motions were based being that of excessive damages. These motions were all denied without reduction of the verdicts.

■ The record shows that Burdette Risley received a laceration below the left jaw; that he suffered an injury to the left chest, extending over the first, second and third ribs near their junction with the breastbone, and this injury caused him to raise a bloody sputum for a period of from ten to fifteen days following the accident; that he received multiple abrasions and bruises to both arms and legs and hands; and that his right ankle, both knees, and his pelvis were fractured. The fractures appear to have healed, but at the time of trial the left knee was still somewhat weak and its recovery was retarded by Burdette's inability to do the necessary exercises, because of the injuries to the right knee. The function of the right knee is permanently impaired—the disability being estimated at about 30 per cent. It appears that the crucial ligaments in the right knee are ruptured and that there is a loose fragment of bone in the kneecap. There was medical testimony showing that surgery on this knee is indicated, but that even with surgery the knee would always be unstable and that Burdette Risley will never be able to do heavy work or work that requires him to be on his feet for long periods of time. There is a possibility that traumatic arthritis will result from the injury to the right knee and perhaps even from the fracture of the right ankle. The chest injury, though healed, has left a noticeable indentation or depression over the ribs, and there are also some minor scars. There is some atrophy in the right leg. Burdette Risley was in the hospital for about three weeks, and he testified that it was not until two or three months after the accident that he had enough strength to get up and walk around even for a short time. His left knee was in a cast for 9 or 10 weeks, and his right leg was also in a cast for about 12 weeks.

At the time of the accident Burdette Risley was 19 years of age. His formal education had ended with the second year of high school. For approximately four months prior to the accident he had been employed as a rachet setter in a sawmill. Although this was seasonal work, the parties in their briefs have accepted $3,472 as his probable annual earnings. In April, 1951, which was some nine months after the accident, Burdette went back to work at the sawmill. He was given the easiest job at the mill, but had to quit after 13 days because he was unable to do the work. In this regard he testified that his legs hurt him and that on one occasion his right knee buckled and he fell.

Violet Risley also suffered extensive injuries. The record shows that she had a 4-inch laceration extending from above the right eye back into the hairline, which required about 30 stitches to close; that she suffered miscellaneous abrasions about the face, hands and left foot; that she had a large hematoma in the muscle of the left thigh; that her chest was bruised; and that she suffered fractures of both bones in the right ankle and of the small bones of the left foot. At the time, she was in the ninth month of her pregnancy, being within a week or ten days of delivery, and she had a separation of the placenta and began to pass a bloody discharge. She went into labor at about 9 o'clock on the morning after the accident and delivered a dead fetus at approximately 2 o'clock that afternoon. Her physician, Dr. Frey, testified at the trial that Violet's progress toward recovery was steady, although delayed by anemia, by mental upset over the loss of the baby, and by the fact that she had been bedridden for six weeks because of the fractures of her left foot and right ankle. In November, 1950, some four months after the accident, when the cast was removed from her right leg she still complained of headaches and nervousness and experienced fear when reference was made to her accident. At the time of the trial she had lost 15 per cent extension in the right foot, and there may be a 10 per cent or so permanent limitation of extension, as well as some traumatic arthritis as a residual from the fracture. She also complained of soreness in the left foot when she remained on her feet for long periods of time. She had disfiguring scars as a result of the four-inch laceration and other abrasions on her forehead. She testified that the chest injury stayed with her for about four weeks, but apparently it has healed. She has a depression about 4 inches long and one inch wide in the left thigh and there is a 3-inch scar over the outer side of the knee. At the time of trial there was some question whether the accident would interfere with future pregnancies. Violet was 17 years of age at the time of the accident, and both she and Burdette were in apparent good health. It appears that she was in a critical condition immediately after the accident, and was given blood plasma the first night and was under an oxygen tent for three days. She was in the hospital for three weeks. She testified that she is unable to do the heavier housework because of the injuries to her foot and ankle. She is conscious of her facial scars and they cause her considerable embarrassment.

Appellants argue that the combined judgments in favor of Burdette and Violet, i.e., $200,000, are entirely out of line with the injuries and resulting disability and disfigurement suffered. They cite a number of cases in which verdicts for injuries have been reduced but it would serve no useful purpose to discuss these cases as each case must be decided upon its own facts. Taking into consideration the extent of the injuries suffered by respondents as hereinbefore detailed, and applying the rules laid down by our appellate courts in numerous cases, we cannot say that the amounts awarded respondents are so large as to indicate passion or prejudice on the part of the jury. The following language of our Supreme Court in *Johnston* v. *Long*, 30 Cal.2d 54, at page 76 [181 P.2d 645], is applicable: "[I]t is not the function of a reviewing court to interfere with a jury's award of damages unless it is so grossly disproportionate to any reasonable limit of compensation warranted by the facts that it shocks the court's sense of justice and raises a presumption that it was the result of passion and prejudice."

### Appeal of Lenwell and Raddatz

As hereinbefore stated, defendants Lenwell and Raddatz filed separate appeals and have filed separate briefs. In addition to the claim of excessive damages, and asserted error in the admission of the opinion testimony of Officers Kitts and Steuber (which contentions we have already discussed in connection with the appeal of defendant Simplot), they also contend that the court erred in the giving and refusing of certain instructions, and that plaintiffs' counsel was guilty of prejudicial misconduct during the trial.

Said appellants Lenwell and Raddatz contend that the court erred in deleting a portion of the instruction offered by them on the subject of expert testimony. The instruction as given by the court was as follows:

"The rules of evidence ordinarily do not permit the opinion of a witness to be received in evidence. An exception to this rule exists in the case of expert witnesses. A person who, by education, study and experience has become an expert in any art, science or profession, and who is called as a witness, may give his opinion as to any such matter in which he is versed and which is material to the case. You should consider such expert opinion and should weigh the reasons, if any, given for it."

The deleted portion stated, substantially, that there was a conflict in the testimony of expert witnesses concerning the

extent and permanency of the plaintiffs' injuries, that the jury must resolve that conflict in favor of the expert testimony which was entitled to the greater weight, and that expert testimony could not be contradicted by the opinion of a nonexpert. Appellants point to certain conflicts in the medical testimony and state that the jury was uninstructed in the matter.

There is no merit in this contention, for the court in other instructions fully instructed the jury as to the burden of proof, preponderance of evidence, and that it was their function to weigh the evidence, that they were the exclusive judges of the credibility of the witnesses, and were to resolve the conflicts in the evidence. These instructions would apply as well to the testimony of experts as to the testimony of other witnesses, and the court properly deleted the unnecessary portions of the offered instruction.

Said appellants next complain of the following instruction given at the request of respondents:

"I instruct you that the uncontradicted evidence establishes in this case that the defendants Earl Lenwell and Warren Raddatz were employees of and acting in the scope and course of such employment of the defendant William Bennett at the time and place of the happening of this accident, and I therefore instruct you that in the event that you desire to return a verdict against either Earl Lenwell, Warren Raddatz, or William Bennett, you must return such verdict against all three of said defendants. In other words, if you believe from the evidence and the instructions herein given that any one of the three is responsible, then under the law of the State of California, all must be responsible."

Apparently it is appellant Raddatz who is complaining of this instruction, for the argument is that Lenwell was the sole driver of the truck and that he was Bennett's employee, not Raddatz's. It is admitted that Raddatz helped to load the truck and that the instruction might be applicable if negligent loading was a proximate cause of the accident, but it is also contended that the jury could have found, from the evidence, that the accident was caused by Lenwell's manner of driving, in which event the instruction was improper. However, said appellants are hardly in a position to urge that such instruction was error because the record shows that at the close of the trial counsel for defendants Bennett, Raddatz and Lenwell stated in open court that he made no contention that there was any difference in the liability of these three de-

fendants; that on the basis of this statement only three forms of verdict were prepared and submitted to the jury, none of which distinguished between the liability of Raddatz on the one hand and the liability of Bennett and Lenwell on the other; that also on the basis of this statement respondents' counsel stated to the jury, without objection, that there was no distinction between the legal positions of Lenwell, Raddatz and Bennett; and that counsel for these three defendants said, in his argument to the jury:

"If you reach the point, in reviewing the evidence, that any one of those three persons were guilty of some acts of negligence which caused that lumber to fall off the truck, then, as far as my clients are concerned, they are responsible to the plaintiffs in this action."

Said appellants next complain that the court erred in giving the following instruction:

"It is a matter of common knowledge of which you may take notice that the purchasing power of the dollar has substantially decreased in recent years. If you determine that the plaintiffs, Burdette Risley, Violet Risley, and Jay Humbird are entitled to recover damages, if any, you may take this factor of reduced purchasing power into consideration in determining the amount of such damage."

A similar instruction was approved in the recent case of *Burke* v. *City & County of San Francisco*, 111 Cal.App.2d 314, 321 [244 P.2d 708] (hearing denied), and in *Kircher* v. *Atchison, T. & S. F. Ry. Co.*, 32 Cal.2d 176, our Supreme Court said at page 187 [195 P.2d 427]:

"It is a matter of common knowledge, and of which judicial notice may be taken, that the purchasing power of the dollar has decreased to approximately one-half what it was prior to the present inflationary spiral [citing cases], and the trier of fact should take this factor into consideration in determining the amount of damages necessary to compensate an injured person for the loss sustained as the result of the injuries suffered."

There was no error in giving this instruction, nor would it have been error to refuse it, because it is hardly necessary to remind a jury of the diminished purchasing power of the dollar as the jurors are reminded of it almost daily when they purchase the necessaries of life.

Said appellants next complain of the following instruction given at the request of respondents:

"If you decide from the evidence that the plaintiffs, Bur-

dette Risley and Violet Risley, are entitled to a verdict, in fixing the amount of damages, if any, you may consider as evidence the fact that the life expectancy of a person aged 19 years is 51.2 years and of a person aged 20 years is 50.2. However, such expectancy is merely the average for one of ordinary health and exposure to danger of people of that age. In connection with this evidence you should consider all other evidence bearing on the same issue, such as that pertaining to the occupation, health, habits, and activity of the person whose life expectancy is in question.''

We are unable to agree with said appellants' contention that the giving of this instruction was error.

The record shows that counsel for respondents stated: ''I would like to offer in evidence the life expectancy table of a male of the age of Burdette, which would be 50.2 years, and a female the age of Violet, 51.2 years.'' The court stated that it was his understanding that the court could take judicial notice of the life expectancies, whereupon counsel for appellants Lenwell and Raddatz stated that the tables that he had indicated lower life expectancies than the table offered by respondents. There was some discussion among counsel and the court suggested that counsel get together and check on the matter and give him the benefit of their result. The record does not indicate that this was done and appellants offered no instruction on life expectancy.

Appellants Raddatz and Lenwell contend that the above instruction was erroneous and prejudicial, and they refer to several mortality tables which show shorter life expectancies. Respondents reply that the courts take judicial notice of mortality tables (citing *Foerster* v. *Direito,* 75 Cal.App.2d 323, 333 [170 P.2d 986], and other cases), that the tables mentioned by appellants in their argument were obsolete, that the court should be allowed to exercise its discretion and make a selection of a mortality table based on modern experience, that the table used was prepared by the Statistical Bureau of the Metropolitan Life Insurance Company and was in conformity with other modern tables, that appellants were given the benefit of an extra year of age by the instruction, and that both Burdette and Violet Risley were in apparent good health prior to the accident, and their actual life expectancies were in excess of the figures used. The general rule is stated in 31 Corpus Juris Secundum, Evidence, sec. 99, pages 698-699:

''The courts take judicial notice of the standard mortality

tables and of their contents showing the natural expectancy of life at a given age of healthy persons in employments not extrahazardous. While there is some variance in the different tables, yet the courts know that an equal or even greater difference in expectation of life may arise from other causes.''

■■■ Counsel for respondents stated in open court that the mortality tables he was using were the ones issued by the Metropolitan Life Insurance Company, and if appellants desired to have some other mortality table used by the court they should have submitted it to the court in the form of an instruction, or otherwise. Furthermore, the instruction contained the qualification that life expectancy as shown by mortality tables is a mere average based on a limited record of experience, that the inference only applies to one who is in average health, and that the jury must consider not only the mortality tables but all evidence bearing on the same issue.

■■■ Said appellants next contend that the court, by giving separate instructions on damages as to each of the three principal plaintiffs, Jay Humbird, Burdette Risley and Violet Risley, overemphasized the issue of damages to the prejudice of said appellants. There is no merit in this contention.

The separate actions of the three plaintiffs were consolidated for trial and in each the court instructed that physical pain and mental suffering were proper elements for the jury to consider; that the term ''mental suffering'' included anxiety, worry, mortification, embarrassment and humiliation; and that mental suffering occasioned by any future pain was also a proper element of damage.

Appellants quote from *Dodge* v. *San Diego Elec. Ry. Co.*, 92 Cal.App.2d 759, 764 [208 P.2d 37], where it is said to be error to give an instruction that unduly overemphasizes issues, theories or defenses either by repetition or by singling them out or making them unduly prominent although the instruction may be a legal proposition. However, as pointed out by respondents, the cases were consolidated for trial on motion of appellants and appellants themselves submitted separate instructions pertaining to different plaintiffs, so they are hardly in a position to complain of the number of instructions on the issue of damages.

■■■ Said appellants Lenwell and Raddatz next complain of the following instruction:

''You are instructed that this is not an action seeking damages for the death of Sylvia Rae Risley. If, however, you find from the evidence that some or all of the defendants

are liable you may include as items of damage in the action of Violet Risley the pain, suffering and anxiety proximately caused by any injuries received by the plaintiff Violet Risley which were proximately caused by and resulting from the miscarriage in which Sylvia Rae Risley was born dead.''

In their opening brief said appellants stated that this instruction was given by the court on its own motion. Respondents in their brief stated that the record did not show who offered the instruction and that therefore it must be presumed that the instruction was given at the request of appellants. In order to clarify the matter, said appellants made a motion before this court to augment the record so as to include the original of said instruction or a photostatic copy thereof. Following a hearing this court granted the motion and the scope of the augmentation was referred to the trial court with direction to take all necessary proceedings and certify to this court its conclusions in respect to the challenged instruction. Thereafter the trial judge, the Honorable Sherrill Halbert, certified to this court that he gave the above instruction on his own motion for the following reasons:

''(a) No adequate or impartial instruction on this subject was offered by any party to this action.

''(b) It was believed by the undersigned then, and it is still believed, that this instruction clearly states the law, namely, that while no damages could be allowed for the death of the child, Sylvia Rae Risley, on the other hand, the mother, Violet R. Risley, who was the plaintiff, could recover for the usual elements of damages growing out of a personal injury, which said injury in this case not only resulted in severe injury to her body, but also brought about a miscarriage as the result of which she was forced to bear a dead foetus, and go through the pain, suffering and anxiety of so doing.''

Said appellants are therefore correct in stating that said instruction was given by the court on its own motion. This instruction, say Raddatz and Lenwell, was given by the court on its own initiative after rejecting all instructions offered by appellants on the same issue, and is objectionable for the reasons that it is (a) incomplete, (b) invades the province of the jury, (c) contains an improper statement of the law and (d) is contradictory. The instruction is claimed to be incomplete in that it does not mention Burdette Risley, the husband, and also because it does not instruct the jury that damages may not be allowed for the death of the child. It is

claimed that it invades the province of the jury in that it advises the jury that Violet Risley has sustained pain, suffering and anxiety, the objection apparently being that the court failed to include the words "if any," after the reference to pain, suffering and anxiety. Appellants conclude their statement of this point by saying that in effect the instruction advises the jury that Violet may recover for her suffering as a result of this death. This last is also said to be contradictory to the first part of the instruction which states that the action is not one seeking damages for the death of the unborn infant. The correct rule, say these appellants, is that Violet Risley may recover for mental anguish *attending* the miscarriage and no more. Appellants also claim that it was improper and prejudicial to refer to the fact that the baby was born dead. In reply respondents point out that the instruction covers pain, suffering and anxiety resulting from the miscarriage, and not from the death; that Burdette Risley was not mentioned because he did not suffer the miscarriage; that in being instructed that the action was not one seeking damages for the death of the baby, the jury was informed that no damages for such death should be allowed; that the instruction refers to "any injuries" received by Violet Risley as a result of the miscarriage, not to "the injuries"; and that evidence regarding the baby's death and its name was received without objection by appellants. They also point out that one of appellants' medical witnesses referred to the death of the baby, and that appellants, themselves, offered two instructions which referred to the death.

We are unable to agree with the contention of appellants Lenwell and Raddatz that the giving of this instruction was error. The jury was informed that the action was not one for the death of the unborn child and it is certainly true that the evidence shows that Violet Risley suffered a miscarriage as a result of the accident, and as stated in the case of *Bovee* v. *Danville*, 53 Vt. 183, cited by said appellants: "Any physical or mental suffering attending the miscarriage is a part of it and a proper subject for compensation." There is nothing in the instruction to justify the statement that the jury was told that they could include compensation for grief or injured feelings over the death of the child. Upon the record in the instant case appellants were not prejudiced by the omission of the words "if any" from the instruction. It is worthy of comment that appellant Simplot does not complain of this instruction.

Appellants Raddatz and Lenwell next complain that the court refused the following instructions offered by them:

"I instruct you that the plaintiff Violet R. Risley is not entitled to recover because of grief, sorrow or resentment on account of any injury sustained by her husband Burdette G. Risley."

"I instruct you that the plaintiff Burdette G. Risley is not entitled to recover because of grief, sorrow or resentment on account of any injury sustained by his wife Violet R. Risley, or because of any scars, blemishes or disfigurements on the face of the wife."

"I instruct you that the law does not permit you to, and you must not, award plaintiffs Burdette G. Risley and Violet R. Risley, or either of them, any sum for the shock, sorrow, mental distress and grief, or injury consequent thereto, if any, that they may have suffered by reason of the death of their child."

"I instruct you that even if you should find that the defendants, or any of them, negligently caused the death of the foetus, or unborn child then being carried by the plaintiff Violet R. Risley, then the death of the foetus or unborn child cannot be included as an element of injury to the plaintiffs Violet R. Risley or Burdette G. Risley, or either of them, and no recovery may be allowed therefor."

"I instruct you that the law does not permit you to and you must not award the plaintiffs Burdette G. Risley and Violet R. Risley, or either of them, any sum for the suffering, if any, occasioned the unborn child then being carried by the plaintiff Violet R. Risley."

However, a reading of all the instructions given by the court shows that the jury was fully and correctly instructed upon the question of damages and the giving of these five instructions in addition to the others given was unnecessary. ██ What the court said in *Kent* v. *First Trust & Sav. Bank of Pasadena*, 101 Cal.App.2d 361, at page 374 [225 P.2d 625], is applicable:

". . . The court is not required to give every instruction requested even if considered by itself it may state a correct and pertinent principle of law. All that is required is that the jury be fully and fairly instructed on all the issues presented."

██ Appellants Lenwell and Raddatz next contend that the court erred in refusing to give the following instruction:

"I instruct you that the ability of the defendants, or any of them, to respond in damages, is not to be considered by you, and that no insurance company is a party to this action and that whether there is or is not insurance has no bearing whatever upon the verdict which you may render in these cases. The amount of damages which you may allow to the plaintiffs, if any, does not depend upon the ability of the defendants to pay, is not punitive in any sense, and would be the same whether the defendants or any of them did or did not carry insurance."

As to this instruction said appellants state that Bennett's public utility permit, which was read to the jury by appellant Simplot's counsel, contained a provision that no vehicle should be operated by the carrier, Bennett, unless adequately covered by public liability and property damage insurance policy. Appellants state they do not claim that the introduction of the permit, or the reading of it into evidence, was in and of itself prejudicial error, but they contend that the requested instruction was required in order to offset the fact, now known by the jury, that Bennett carried insurance; that they were entitled to have this instruction; and that in the absence of such an instruction this court has no basis for assuming that the damages awarded were not simply an attempt by the jury to estimate the extent of the coverage under the policy.

Respondents in reply argue that Raddatz and Lenwell, through their counsel, expressly acquiesced in the introduction of this evidence; that the jury knew that no insurance company was a party to the actions, and probably already assumed that Bennett was insured; that the permit did not state that Bennett actually was insured; that the reference was to Bennett and he is the only one who could have been prejudiced by it; and that the matter of insurance was introduced by Simplot, not by respondents. Respondents ask why their rights should be jeopardized by the conduct of Simplot's counsel, and they point to the danger of permitting codefendants to defeat a recovery through the studied employment of such practices. Appellants Raddatz and Lenwell answer that regardless of who introduced the evidence of insurance, it had no place in the jury's deliberations.

While we believe that the court might well have given the requested instruction we do not believe that upon the record in the instant case the failure to give it constitutes reversible error. The jury of course knew that no insurance company was a party to the action, and as stated by this court

in *Moniz* v. *Bettencourt*, 24 Cal.App.2d 718 [76 P.2d 535], it is very generally known to every person of understanding "that common carriers operating large trucks upon the highways are so protected [by insurance]." We do not believe that the failure to give the requested instruction affected the final outcome of the case or the amount awarded.

Appellants Lenwell and Raddatz contend also that respondents' counsel was guilty of prejudicial misconduct during the trial. They cite several instances of alleged misconduct on the part of respondents' counsel in referring to the death of the baby. These are as follows:

(1) In his opening statement to the jury counsel said: "She [referring to Violet Risley] was expecting her baby any day. At the time of this injury she received such a crushing blow that the unborn baby was apparently instantly killed, and was born a still birth shortly thereafter."

(2) In his opening argument to the jury, counsel stated: "There they are married, the husband had a fine position, hard working, had a little home, and the baby was going to be there most any day."

(3) Again, counsel said during his opening argument: "Then we come to the proposition of the pain and suffering in connection with the death of the little baby."

(4) And, during the same argument, counsel said: "All he [referring to Burdette Risley] asked was to have his little home, his wife, his daughter, and his job."

(5) In his final argument to the jury counsel stated: "There is no reason why, they were injured and their baby gone, in this county they should be given a few pennies, whereas if it had happened in San Francisco county there would be a difference."

(6) And again: "You have been asked to bring in a verdict and say to the world and those interested in the defense of these actions that so far as the people of the county are concerned their pain and suffering is cheap, their disfigurement is cheap, we chisel on the loss of wages, we chisel on the proposition of disability, we chisel on the pain and suffering caused by the expulsion of this little girl who would have been here today except for that, but if you do it in Placer County it is ten cents on the dollar."

(7) And, in closing, he said: "I leave with you Violet, without her daughter, and with her scars. I leave with you Burdette, in a completely confused state, without his daugh-

ter, without a job, and without the training or education to get one for which he is equipped.''

These statements are, of course, taken out of context. Appellants Raddatz and Lenwell contend that these references to the death of the child were calculated to, and did, arouse the passion and prejudice of the jury to such an extent that excessive damages were awarded as a result of this aroused feeling. Respondents reply that, with one exception, there were no objections made to any of the statements in question, and that, without exception, there were no assignments of misconduct or requests that the court admonish the jury concerning the statements. The exception refers to the objection made by Mr. Chamberlain, counsel for Bennett, Raddatz and Lenwell, to the third remark set out above. The record shows that the following occurred at that time:

''Mr. Robinson: . . . Then we come to the proposition of the pain and suffering in connection with the death of the little baby. That's something that, frankly, I can't help you very much on. It just is a matter that you are going to have to use your——

''Mr. Chamberlain: If the Court please, pardon the interruption, I will have to object to any remarks of counsel for any damage caused by pain and suffering due to the death of the child, as not within the issues, not a proper element to be considered by the jury in this action. Plaintiffs have their separate action for the death of the child; not a proper amount to be considered in arriving at a verdict of either Mr. or Mrs. Risley in this action.

''Mr. Robinson: I submit the pain and suffering caused by the injuries which caused the miscarriage are a proper item of damage in this action. That is what my remark was called to.

''Mr. Chamberlain: It was 'caused by the death of the child.'

''The Court: I think it should be confined to the pain and suffering; I do think that is a proper element. The matter of the death of the child is not the issue in this case.''

We believe that said appellants' claim of misconduct comes too late. No objections, with the one exception noted above, or assignments of misconduct having been made at the trial, and the court not having been asked to instruct the jury to disregard the challenged remarks, it is too late to raise the point on appeal. (*State Rubbish etc. Assn.* v. *Siliznoff*, 38 Cal.2d 330, 340 [240 P.2d 282].) ▪ Misconduct of an attorney is not a ground for reversal where the other party,

even though objecting to the remarks, fails to request that the jury be charged to disregard them. (*Houser* v. *Bozwell,* 80 Cal.App.2d 702, 707 [182 P.2d 314].) As the effect of misconduct can ordinarily be removed by an instruction to the jury to disregard it, it is generally essential, in order that such act be reviewed on appeal, that it shall first be called to the attention of the trial court at the time, to give the trial court an opportunity to so act in the premises, if possible, as to correct the error and avoid a mistrial. (*Cope* v. *Davison,* 30 Cal.2d 193, 202 [180 P.2d 873, 171 A.L.R. 667].) A party should not be permitted to remain quiet and take the chance of a favorable verdict, and then, if the verdict is unfavorable, raise the objection on appeal. (*Aydlott* v. *Key System Transit Co.,* 104 Cal.App. 621, 628 [286 P. 456].)

It is apparent from the record that the instant case was hotly contested and that all parties were represented by able and experienced counsel. It is to be expected in such a case that counsel for plaintiffs will endeavor to impress his views upon the jury by vigorous and forceful argument. Counsel in summing up a case are given wide latitude and may indulge in all fair arguments in favor of their client's case. If in their overzeal in behalf of their client's case they go outside the record and the issues and make improper and unjustified statements, the vigilance of able counsel on the other side can usually be depended upon to make the proper objection and assignment of misconduct and to request the court to properly instruct the jury and to admonish counsel. While the language of counsel for respondents here complained of was vigorous and forceful, we do not believe that it can be held to be outside of the bounds of legitimate argument, and the fact that no objection or assignment of misconduct was made at the time by the able and experienced counsel representing the various appellants strengthens us in this belief.

Because of the numerous contentions of error urged in the more than 300 pages of appellants' briefs, we have made a careful study of the entire record in the instant case. With the exception of the contention as to the insufficiency of the evidence, the claimed errors relate to admission of evidence, instructions and asserted misconduct of counsel. As hereinbefore set forth we have concluded that the evidence is sufficient to support the judgment. As to the other contentions of error we do not believe that the claimed errors are sufficient to justify a reversal of the judgment.

Section 4½ of article VI of our state Constitution reads as follows:

"No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

The instant case was tried by able and experienced counsel and was presided over by an able trial judge who after full hearing denied appellants' motions for a new trial. Taking the record as a whole, and bearing in mind the plain and meaningful words of the Constitution hereinbefore quoted, we are satisfied that even if appellants are correct in some of their contentions of error, no miscarriage of justice has resulted.

The judgments and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition by Appellant Simplot Investment Co. for a rehearing was denied January 14, 1955, and its petition for a hearing by the Supreme Court was denied February 10, 1955.